### In re NORDHEIM.

### In re MILSTEIN.

### No. 374.

Circuit Court of Appeals, Second Circuit.
April 8, 1935.

Leon Dashew, of New York City (Leon Dashew and Herbert D. David, both of New York City, of counsel), for appellant.

David F. Cohen, of New York City (John J. Fogarty and David F. Cohen, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question before us is whether the bankrupt, Henry Nordheim, should be denied a discharge because he "concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained." Such conduct, when proved, is a bar to a discharge "unless the court deem such failure or acts to have been justified, under all the circumstances of the case." Bankruptcy Act, § 14, as amended by Act May 27, 1926, § 6 (11 USCA § 32).

We have recently held that the statute does not require an intent on the part of a bankrupt to conceal his financial condition from his creditors in order to preclude his discharge for failure to keep records. Karger v. Sandler (C. C. A.) 62 F.(2d) 80. But he must have intended to keep his records from his creditors or trustee in order that his acts should amount to concealment. We are not persuaded that he intended to keep the records from his creditors and, therefore, hold that the objection to his discharge that he concealed "records from which his financial condition and business might be ascertained" was not established.

At the first meeting of creditors the bankrupt was asked whether he ever kept any books and replied in the negative. When asked whether he ever kept "any records" of what his "income was as an architect," he answered "not collectively." The evidence taken at the hearings as to his discharge shows that by "not collectively" he meant that certain cards on which he had entered his receipts and sheets of paper on which he entered his expenses in his business as an architect were not kept together, but each card or expense sheet was placed with the order and drawings of the particular job to which it related. In other words, the records in connection with the various orders were not assembled but filed separately. At the first meeting he had said that he could not remember the amount of his earnings as an architect during the three years prior to his bankruptcy.

After the objection was made to his discharge that he had concealed "records from which his financial condition and business might be ascertained," he produced at the examination before the special master the cards and expense sheets which he had assembled and tabulated. They showed receipts as architect of $4,040 for the three years, and expenditures of $3,996.21 for the same period, leaving a net balance of only $43.79. He testified that during the three years he had received an aggregate salary of $6,050 as president of Grabert Realty Corporation, of which he repaid to the corporation, owing to its financial necessities, $550 so that his net receipts from it were $5,500. He expended $3,560.70 itemized as follows:

| | |
|---|---|
| Support of father, 3 years | $1,502.00 |
| Medical services 1931, occasioned by an accident and hospitalization | 275.00 |
| Legal expenses, litigation with one of his physicians | 150.00 |
| Employment of chauffeur (while disabled) | 510.00 |
| Marriage of daughter (1932) | 350.00 |
| Coal delivered at his home which was owned by his wife | 215.00 |
| Vacations and week end trips in 1932 | 558.70 |
| | $3,560.70 |

The balance of $1,983.09, which remained after deducting $3,560.70 from $43.79 plus $5,500, went to living expenses during the same period. None of these receipts or expenditures was inherently improbable, and we have no reason to suppose that the bankrupt's testimony in regard to them did not reflect his true financial condition. While the answers of the bankrupt were at times evasive, he seems to have sufficiently explained the disposition of his funds and to have made it improbable that he omitted to produce his records because he was concealing anything.

Neither the referee, who acted as special master, nor the district judge, doubted the correctness of the receipts and disbursements as reported by the bankrupt. His discharge was denied because he was found to have concealed the cards and sheets. We can see nothing to indicate that he had any reason for concealment and accordingly believe that while he omitted to produce them at first, he did not conceal them. Their production was in no way compromising. He might well have failed to mention them in his schedules and omitted to have produced them prior to the hearing for his discharge because they showed no property available to his estate and really amounted to nothing. As soon as he was apprized by the objections to his discharge that he was criticized for not producing them, he brought them to the hearing. They disclosed nothing which made their retention indicative of concealment. On the other hand, the undisputed evidence showed that the bankrupt consumed his income as fast as it accrued and that nothing was kept from his creditors. We hold that the specification was not sustained.

■ It is argued that part of the office expenses which he charged to his business as an architect should have been debited to the Grabert Realty Corporation, but the latter company was running at a loss, and, if it had been subjected to other charges the bankrupt's salary would have been reduced pro tanto. We cannot see that any change in bookkeeping would have affected the creditors of the bankrupt.

The order is reversed, and the proceeding is remanded, with direction to grant a discharge to the bankrupt.