## In re OCEANSIDE NAT. CORPORATION.
### No. 21262.

District Court, E. D. New York.
Feb. 11, 1933.

Newton G. Avrutis, of Brooklyn, N. Y., for bankrupt.

Wright & Wright, of Rockville Center, N. Y., for objecting creditor.

BYERS, District Judge.

Hearing on motion for an order confirming the report of the referee dismissing the specifications filed in opposition to the discharge of the bankrupt.

■ There are five specifications, of which the first is the most important; it is as follows:

"First: For the reason that with intent to conceal its true financial condition, it has failed to keep books of account or records, or has destroyed and concealed books of account and records from which said financial condition might be ascertained."

The foregoing is deemed to be sufficient in form to invoke the applicable provision of the Bankruptcy Act governing discharges, which may not be granted where the bankrupt has "(2) destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case; * * *." Section 14b (2), Bankr. Act, 11 USCA § 32 (b) (2).

Probably the form of specification goes beyond the present requirements of the statute, because the intent to conceal is no longer a necessary element of the failure to keep books.

■ A reading of the testimony taken before the referee discloses that no books of account whatever were kept by this bankrupt, and indeed so much is conceded by its attorney; consequently there are no written corporate records from which the financial condition and business transactions of the bankrupt could be ascertained, and the discharge will have to be denied, therefore, unless the court, under all the circumstances of the case, can deem such failure to keep books of account to have been justified.

The corporation was organized in January, 1928, to take title to two parcels of unimproved real estate in Long Beach, which yielded no income, and which were subject to two first mortgages held by the objecting creditor. The incorporators had knowledge that a proceeding was in contemplation to widen Long Beach Road, upon which the

property fronted, and during 1929 that was accomplished, and on July 25th of that year the corporation received an award of $8,010.-00 for a strip of its property so taken, which, as stated, was covered by a first mortgage; if the mortgagee's right to participate in the award had been protected by the bankrupt, proper records of a financial nature would have been set up in the form of books of account of the corporation.

This was not done, however, but the money was turned over to the treasurer, who testified that he had disbursed it in payment of other debts said to have been owing by the corporation to his mother. There was no corporate record of these debts because, as has been stated, there were no books of account of the corporation. It is true that five of eleven items of alleged corporate indebtedness were probably shown, in the testimony before the referee, in the form of checks drawn by the mother of the treasurer, but, as to the remaining six items, there is no corporate record, and therefore the proper basis for alleged execution and delivery of one or more corporate notes to the mother of the treasurer cannot be vindicated as the result of an inspection of the corporate financial records. As the indebtedness which is said to have been paid was on account of these corporate notes, the importance of an entire absence of books of account becomes apparent.

The check said to have been used by the treasurer in disbursing the $8,000.00 paid by Nassau County to the corporation was not produced before the referee, and is said to have been lost or mislaid. The entire explanation of this handling of corporate funds rests in the testimony of the treasurer of and attorney for the corporation, and what has been gleaned from his personal bank account.

The referee was satisfied with the explanation made to him, so far as the truth is concerned of the facts testified to, but it is thought this is not the test to be applied to the above quoted provision of the Act.

This corporation took title to other properties, and the officers who were examined say that this was done for the convenience of the real owners, who were relatives, in order to facilitate the raising of building loans; the result was that one such loan was negotiated and over $4,300.00 was paid by the lending company to the bankrupt, and disbursed by it through the individual account of the same officer who handled the $8,000.00; in other words, this was an agency transaction, even though the funds involved were handled as though they were the property of the corporation.

Without questioning, for present purposes, the truth of the testimony given, it must be apparent that, if any significance is to be attached to the applicable provision of the Bankruptcy Act, it would be a hazardous thing for a court to say that the failure of the corporation to keep books of account from which such transactions might be ascertained should be deemed justified under all the circumstances of the case.

The transfers of property referred to in the fourth and fifth specifications involve these very properties now said to have been held by the corporation as agent; perhaps, if the bankrupt had caused books of account to be kept, the facts would have been so clearly revealed therein that no such specifications would have been filed.

In the Matter of Walter W. Weismann (D. C.) 1 F. Supp. 723, 21 A. B. R. (N. S.) at page 478, Judge Patterson said in this connection:

"I agree with the opposing creditor that the 1926 amendment effected an important change in the law; that decisions under the section as it stood prior to 1926 are unreliable guides for cases arising under the present provision; and that now the burden of showing why books were not kept rests on the bankrupt. The fair meaning of the section as it stands at present is that a discharge shall be withheld from a bankrupt who has not kept books of account or financial records, unless his situation was such that the normal person under like circumstances would not have kept books and records. * * * The standard is one set by the practice of the day."

Within the foregoing, it is apparent that this bankrupt has not established that a realty corporation, acting in part as owner and in part as agent, would not have kept books of account under the practice which prevails today, and therefore this court is unable to agree with the referee in dismissing this specification.

The second specification has to do with the failure of the bankrupt to produce the check for $8,000.00 above referred to. This seems not to be within the terms of the statute involved, because the payment of the $8,000.00 occurred more than twelve months prior to the filing of the petition herein on November 4, 1931. Section 14b (4), Bankr. Act, 11 US CA § 32 (b) (4).

The third specification has to do with the same transaction; namely, the receipt of

the $8,010.00 for the award in the condemnation proceedings for a strip of property covered by the first mortgage, held by the objecting creditor. As this transaction occurred prior to twelve months before the filing of the petition, it is not seen how the specification could have been legally sufficient. For this reason, so much of the report of the referee as finds in favor of the bankrupt on this subject on the merits is set aside.

It is difficult to see how the conduct of the bankrupt in using this money for its own purposes can be vindicated. If the county of Nassau had the right to take part of the property covered by the mortgage, it had the right to take it all, and, if the owner had the right to take the award for part of the property, it would have had the same right to take the award for the entire property, and thus, in effect, to deprive the mortgagee of the proceeds of the property on which she had a lien.

The fact that she had actual notice of this condemnation proceeding and participated in the award on adjoining property has no bearing whatever on the issues in this proceeding, and certainly no evidence was presented before the referee concerning a possible benefit conferred upon the balance of the parcel not taken in the condemnation proceedings, although the report treats of that subject.

The fourth and fifth specifications have to do with the alleged transfer by the bankrupt to relatives of the officers, of certain assets consisting of mortgages, without consideration, and the retransfer of one of them, to the treasurer of the corporation as an individual.

It is not alleged that these transfers were made within the prohibited period covered by the statute; nor was there evidence adduced before the referee which would support the specifications.

It is not urged, in the brief filed in behalf of the objecting creditor, that these specifications have been sustained.

The motion to confirm the referee's report, as to the first specification, is denied; as the second and third specifications are deemed to have been insufficient, they will be treated as though an exception had been sustained thereto; as to the fourth and fifth specifications, there is a failure of proof; and accordingly the referee's report recommending the granting of discharge will be set aside, and the application for discharge will be denied.

Settle order on notice.