### In re WILSON.

District Court, S. D. New York.

June 21, 1937.

808

In view of the disposition which the court intends to make, the facts will be set forth at some length.

The grounds of the objections to the discharge are summarized by the referee, as follows:

The first specification alleges in the language of the statute that the bankrupt concealed or destroyed his books of account and records, and the second specification alleges his failure to keep books of account and records from which his true financial condition and business transactions might be ascertained.

The third specification alleges that the bankrupt failed to explain satisfactorily the loss of assets or deficiency of assets to meet his obligations.

The fourth specification alleges the commission of offences punishable under section 29b of the Bankruptcy Act, as amended by Act May 27, 1926 (11 U.S.C.A. § 52 (b) in that (a) he has concealed from the trustee a beneficial interest in the business conducted under the name of "Tappe" at 17 West 50th street, New York City, as an asset of the estate; (b) in concealing a beneficial interest in two parcels of property known as 725 and 729 East 163d street, Borough of Bronx, City of New York; (c) that he made a false oath by omitting from his schedules his interest in the firm of "Tappe" and his interest in the real property as aforesaid; (d) that he made a false oath in testifying that he did not know where his books and records were being kept.

Counsel for the bankrupt states in his brief: "Prior to 1931 the bankrupt was a man of means and by rare business acumen had accumulated a fortune well in excess of a million dollars. His property interests were diverse and consisted of realty holdings and a chain group of stores devoted to the sale of women's wearing apparel. With the onset of the depression the bankrupt, because of financial pressure, was compelled to drop his realty holdings one by one and was likewise compelled to sell out his various stores."

George Engel, the objecting creditor, a former assistant buyer and assistant manager for the bankrupt, sued in a New York state court action for damages for breach of contract of employment and obtained a judgment on December 28, 1932, for $3,636. The pursuit by this creditor of his remedies in special proceedings in the state

Arnold S. Greene, of New York City, for bankrupt.

S. Earl Levene, of New York City (Thomas F. McAndrews and Emanuel S. Cahn, both of New York City, of counsel), for objecting creditor.

HULBERT, District Judge.

The referee in bankruptcy, to whom was referred the issues raised by the specifications of objection to the petition of the bankrupt for discharge, has reported that the charges of the objecting creditor have not been sustained and recommends that the application of the bankrupt be granted.

court action apparently precipitated the ultimate filing of a voluntary petition by the bankrupt on May 8, 1936, in which he sets forth liabilities of $281,691.94 and assets of $206.

There have been extensive hearings under section 21a of the Bankruptcy Act (11 U.S.C.A. § 44 (a), as well as upon the objections filed herein which are confined principally to the business carried on at 12 West 40th street, New York City.

On March 31, 1921, Ralph Wilson filed in the office of the clerk of New York county a certificate as the successor in interest to the business theretofore conducted under the name of "Tappe" at 12 West 40th street, New York City, having purchased from Herman Tappe, the trade-name, good will, and stock.

In 1931, Wilson incorporated and transferred the 40th street store to Ralph Wilson, Inc., and received 125 of the 128 shares of the capital stock issued by it and became the president of the corporation.

The bankrupt had in his employ for many years a Miss Janet Helme, who had been promoted from time to time until she received a salary of $100 per week, which, in 1926, was increased to $150. The bankrupt testified that Miss Helme "put in $1,-000" in 1913 and other amounts of perhaps $2 or $3, or maybe $10 per month upon which he agreed to pay her 6 per cent. interest, and later, when the company was unable to meet its weekly checks for her salary, they were not presented by her for payment but retained and the amount thereof added to his indebtedness, the only alleged evidence of which was contained in a memorandum book kept by her but not produced upon the hearings, although she appeared and gave testimony.

About the time of the incorporation of the business, Mr. Wilson turned over the 57th street store to his daughter and it was closed soon thereafter.

He also claims to have sold his 125 shares of the capital stock of the corporation to Miss Helme. At that time his indebtedness to her amounted to some thirty odd thousand dollars, and he testified that she paid him $7,500 for said stock; $1,500 in cash and gave him credit for the remaining $6,000 upon his said indebtedness to her. Thereupon Wilson became an employee of the company at $10 per week and expenses for entertaining customers,

and testified that he "went there when I pleased and I went away when I pleased." He was not limited in expenses for customers which averaged about the amount of his salary, but he seems to have had considerable responsibility for a $10 employee.

In May, 1935, he negotiated a temporary lease with Rockefeller Center, Inc., for the premises at 17 West 50th street now occupied by the Ralph Wilson, Inc., and in connection therewith gave to the landlord, at the request of its agent, a financial statement of the corporation, to which he subscribed only his individual signature and later, when the terms of the proposed lease were presented, he likewise indicated the acceptance thereof in his own individual name. The telephone in both the store at 12 West 40th street, and the present address of the corporation as listed in the telephone directory, appears in the individual name of Ralph Wilson, and, according to the testimony of a representative of the Telephone Company, there has never been any other contract than that originally made with Wilson about January, 1921; nor has there ever been any change made in the registration of the trade-name "Tappe."

The referee states in his report: "While there are some suspicious circumstances in connection with the transfer of the interest in the corporation to the said Janet Helme and in the relationship of the bankrupt's services to the corporation for a small compensation, nevertheless the undersigned Referee is of the opinion that these suspicious circumstances are not sufficient to invalidate the testimony as to the real status of affairs, and is of the opinion that the objecting creditor has failed to establish his allegations in this regard."

Practically the only testimony to be "invalidated" by "these suspicious circumstances" is that of the bankrupt and Miss Helme, both of whom were interested witnesses.

The learned referee was not obliged to accept their uncorroborated testimony. In Elwood et al. v. Western Union Telegraph Co., 45 N.Y. 549, at page 553 et seq., 6 Am.Rep. 140, the court said: "There may be such a degree of improbability in the statements themselves as to deprive them of credit, however positively made. * * * And furthermore, it is often a difficult question to decide when a witness is, in a legal sense, uncontradicted. He

may be contradicted by circumstances as well as by statements of others contrary to his own. In such cases, courts and juries are not bound to refrain from exercising their judgment and to blindly adopt the statements of the witness, for the simple reason that no other witness has denied them, and that the character of the witness is not impeached."

The referee was of the opinion that an objection of insufficiency to the first specification was well founded upon the authority of In re McLaughlin (D.C.) 4 F.Supp. 107, because the books and records alleged to have been concealed and destroyed were not specifically set forth and that an allegation in the words of the statute was not sufficient, but he took the testimony for the information of the court.

■ While the general rule appears to be that specifications of objection should contain allegations sufficient to show that all the essential facts exist, bringing the opposition within the grounds specified by the statute (In re Ruhlman et al. [C.C.A.] 279 F. 250, 252) I am not aware that the principle of In re McLaughlin has ever been applied in this District. The learned opinion in that case refers to In re Ruhlman, supra, In re Grossberg, 11 F.(2d) 329 (D.C.S.D.Fla.), and In re Bauknight (D.C.) 14 F.(2d) 674, but only the Grossberg Case was concerned with a specification charging the concealment or destruction of books of account.

Earlier cases held that the specification of objection may state the charge generally, following the language of the statute and without giving particulars, since such matters are peculiarly within the bankrupt's own knowledge and cannot ordinarily be specified in detail. In re Bellis et al. (D.C.S.D.N.Y.1870) Fed.Cas.No. 1,275; In re Patterson (D.C.N.D.N.Y.1903) 121 F. 921; In re Nathanson (D.C.E.D.N.Y.1907) 155 F. 645; In re Oceanside Nat. Corp., 2 F.Supp. 504 (D.C.E.D.N.Y.). In Re Magen Bros. Co. (C.C.A.3) 192 F. 883, at page 885, Judge Buffington said:

"Now the purpose of a specification is to fairly apprise the bankrupt of such matters in bar of his discharge as will be insisted upon, in order that he may be able to meet them. Such matters are not to be specified with the exactness and formality required in indictments, but only in such substantial form as will fairly inform one of the charges made against him. But where, as in the case of books of account,

the bankrupt in the very nature of things, and he alone already knows what books he did or did not keep, and the creditor does not know, except as he infers their nonexistence, concealment, or destruction from the fact of their nondelivery to the trustee, it would seem that a specification following the language of the statute and covering non-keeping, concealment, or destruction sufficiently and fairly apprises the bankrupt of the matter insisted upon in that respect."

It appears that the bankrupt maintained a separate set of books reflecting the business carried on in each store operated by him, and that as he disposed of these stores he delivered the books of account to the purchaser. He kept a regular set of books at the 12 West 40th street store up to the time of its transfer to the corporation. The books went with the business. To the best of his recollection they were left there except the ones he wanted at 41 West 57th street. He could not specify the books which went to the 57th street store but saw them there in the office and, when his daughter took over that store, those books went with it. He saw some of the remaining books go out of the 40th street store in November, 1935, when the corporation moved to 50th street, and testified, "I always claimed that some of the books went from Fortieth Street to Fiftieth Street." Yet, in the 21-A examination he testified that he last saw them around 1930 at 12 West 40th street or 41 West 57th street, but said nothing about seeing any books of his taken up to 50th street. He did not produce any books upon the hearing, but claimed that he did not know where they were, or what had become of them; showed no effort to locate them or account for their disposition, although they must have contained information regarding the liabilities from which he seeks to be discharged, and might have been of some benefit to the Trustee in recovering possible assets.

The bankrupt also testified that, when he sold his stock to Miss Helme, she returned to him the uncashed checks for salary representing in part his indebtedness to her which she canceled, but he did not produce the checks. He claims he knew nothing about them, and offered no proof that he tried to locate them or account for the fact that they were destroyed, or the circumstances thereof.

■ Section 14b of the Bankruptcy Act (title 11 U.S.C.A. § 32 (b) formerly pro-

vided: "The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto, * * * and investigate the merits of the application and discharge the applicant unless he has * * * (2) with intent to conceal his financial condition, destroyed, concealed, or failed to keep books of account or records from which such condition might be ascertained."

As amended May 27, 1926, clause (2), 11 U.S.C.A. § 32 (b) (2) now reads as follows: "destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case."

It is to be observed that "with intent to conceal" was eliminated by said amendment and "financial" (condition) and "business transactions" have been included by said amendment. Thus the burden of proving "intent to conceal" is taken from the objecting creditors, and the burden of proving justification is placed upon the bankrupt.

As the court said in Nix v. Sternberg (C.C.A.) 38 F.(2d) 611, at page 612, certiorari denied 282 U.S. 838, 51 S.Ct. 20, 75 L.Ed. 744: "These changes, in our opinion, are significant and indicate a purpose on the part of Congress to lodge with the bankruptcy court a reasonably wide judicial discretion in respect to the matter of denying a discharge for failure to keep books," and likewise as to concealment and failure to produce books.

The referee dismissed the second specification without special comment, and what has heretofore been said herein will suffice. Cf. In re Weismann (D.C.) 1 F.Supp. 723.

The bankrupt owned the premises 4820 Barnes avenue, borough of the Bronx, at the time he bought "Tappe" and lived there. He lives there now, but the title of the premises passed meanwhile to his brother in Chicago, to whom he pays no rent. He also owned a lot on Barnes avenue upon which he some time ago made a mortgage of $5,000 to Miss Helme and thereafter transferred the equity to his brother. Miss Helme also owned a tenement house known as 729 E. 153d street (referred to also as E. 163d street), Bronx, and her mother is now the owner of the adjoining house 725 E. 153d street, of which the bankrupt was the previous owner. I do not, however, regard this a matter of any consequence and merely mention it as an incident.

For a period of years he had dealings in his own name with Springs & Co., a firm of stockbrokers. He testified this account was opened with $1,000 entrusted to him by his wife to invest on her behalf, and the referee states that the wife's bank book was produced showing that the withdrawal from the Eastchester Savings Bank of $1,000 corresponded in date to the opening of said brokerage account, but I do not find anything in the record before me to that effect.

The bankrupt further testified that he not only dealt in a representative capacity on behalf of his wife, but also for various other persons, and that, while the account was in his own name originally, it was transferred to his wife's name on or about February 4, 1933. That was about three weeks after the service upon him of an order in supplementary proceedings upon the judgment of the objecting creditor requiring him to appear and be examined on February 8, 1933, concerning his property. Apparently he continued to direct the operation of this account in his wife's name thereafter. On February 6, 1936, he was served with a second order for examination in supplementary proceedings, and the next day he procured a power of attorney from his wife to use her said brokerage account.

The Congress had a definite purpose and intention when on May 27, 1926, it amended section 14b, 11 U.S.C.A. § 32 (b), supra, by adding: "Provided, That if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this paragraph (b), would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

In Matter of Reidy (D.C.) 12 F.Supp. 370, at page 371, in which the facts are quite analogous to the case at bar, Judge Forman said: "The bankruptcy law provides a medium whereby a harassed debtor may obtain absolute remission from his debts and be restored to the community with an opportunity to regain an economic foothold. On the other hand, he is expected to reciprocate with an honest disclosure of all of his assets so as to permit an equitable and fair distribution of the same among all of his creditors. Only the bank-

rupt who has acted in good faith with the highest degree of candor ought to be relieved and discharged."

There is a singular absence of good faith on the part of the bankrupt in this case. When he saw the financial storm approaching, he prepared for it; he sold each individual store, one by one; he disposed of his real estate in the family and to friends; he gave the 57th street store to his daughter; he incorporated the remaining store as a sort of a cyclone cellar for protection, and evidently, while the objecting creditor was pressing his state court action, the bankrupt made a transfer of his stock ownership—apparently his sole remaining asset (except such interest as he had in the brokerage account) under circumstances which certainly cast the burden upon him to establish the good faith of that transaction. His attitude with regard to the books of account simply confirms the "suspicion" that he had made away with his assets and did not mean to have available any telltale evidence that would embarrass him in accounting for their dissipation.

Upon the evidence, as well as upon the law, the petition to review must be sustained and the application for a discharge denied. Settle order.