## In re WEINSTEIN.

District Court, S. D. California, S. D. January 17, 1929.

No. 11752.

Paul Shapiro, of Los Angeles, Cal., for trustee.

Francis D. Adams and Earl Curtis Peck, both of Los Angeles, Cal., for objecting creditor.

Kyle Z. Grainger, of Los Angeles, Cal., for bankrupt.

HENNING, District Judge. The report of the special master was as follows:

"This matter was referred to the undersigned as special master, to make findings of fact, conclusions of law, and report to the

court on the issues raised by the objections to the confirmation of the proposed composition. There is only one of such objections that need be considered, that the bankrupt is guilty of acts which would bar his discharge. As to all of the other allegations in opposition to the confirmation of the composition, the finding must be that such allegations are not sustained by the evidence.

"By an amendment to the objections to the confirmation of the composition the objecting creditor alleges that the bankrupt obtained credit upon materially false statements in writing, in that on May 10, 1923, and January 29, 1924, the bankrupt delivered to the Bank of Italy, a corporation, two certain statements in writing and obtained credit thereon, and that such statements were false, in that the obligations due by the bankrupt to his wife were not listed as liabilities thereon. The evidence established all of these facts to be true. Counsel for the bankrupt denies the right of the objecting creditor, as not being the person who received the written statements and granted credit thereon, to raise this question. Any party in interest may oppose the bankrupt's discharge, on the ground that he obtained credit upon a materially false statement in writing, even though the statement was not delivered to the person so opposing the discharge, nor the credit obtained from him. In re Harr (D. C.) 143 F. 421; In re Shaffer (D. C.) 169 F. 724; In re Dresser & Co. (D. C.) 144 F. 318; Friend v. Talcott, 228 U. S. 27, 33 S. Ct. 505, 57 L. Ed. 718, 30 Am. Bankr. Rep. 31.

"The bankrupt also urges two other points: First, that the time elapsing between the date the statement was given and the credit obtained to the date of the raising of the objections (more than four years) was such as to bar the raising of the objection; and, secondly, the money obtained by the giving of the statement having been repaid long prior to the raising of the objection, the right to object on this ground no longer exists.

"As to the first point, the length of time elapsing, there does not seem to be any authority on this particular question. In Josephs v. Powell & Campbell (C. C. A. 2d) 213 F. 627, 628, the court said: 'The fact that two years afterwards these debts had been paid or released, or that when the statement was made the bankrupt believed that the relatives to whom he owed money would not press him for payment, in no way mitigates the falsity of the statement when it was made.'

"From this language it is apparent that the objection to the discharge was raised at least two years after the money was obtained by use of the statement, and while the matter of lapse of time does not seem to have been made an issue, in the language of the court above quoted the fact that the debts had been paid two years afterwards in no way mitigated the falsity of the statement when it was made.

"Throughout the various decisions of the courts discussing the right of a bankrupt to a discharge will be found enunciated the principles of law that the granting of a discharge to a bankrupt is not a matter of absolute right, but a privilege conferred upon one who comes into a bankruptcy court with clean hands, and maintains that cleanliness by compliance with the orders of the court during the administration of his estate. It is not the policy of the law that a man dishonest at heart, and who knowingly engages in fraudulent practices, should be encouraged therein by raising a technical bar or time limit, and be released from his obligations and permitted to again prey upon the business world. It is the character and conduct of the bankrupt toward his creditors at large to which the court gives consideration, rather than conferring a power upon one particular creditor to grant or deny a release from the bankrupt's debts. For instance, in discussing a discharge, the court, In re Carton & Co. (D. C.) 148 F. 63, 66, 17 Am. Bankr. Rep. 343, said:

"'The policy of the Bankruptcy Act is founded on equal rights and privileges to all creditors; it is not intended as a means to punish the bankrupt at the option of the defrauded creditor only. Discharge from debts is a matter of favor, and not a matter of right. Honesty on the part of a bankrupt is rewarded by a discharge. Fraud and dishonesty are stamped with disapproval of a discharge. Contumacy on the witness stand, a previous discharge within six years, obtaining money upon false statements, and the commission of an offense punishable by imprisonment under the act, are all valid objections to a discharge, and are not limited to the defrauded creditors alone, but may be urged by any and all creditors. It is the fraudulent conduct that is aimed at, and not retaliation for the individual loss. So that in a peculiar sense, the concern of one creditor is the concern of all. As all share equally in the distribution, so all are protected equally by the withholding of a discharge.'

"A further discussion of similar principles will be found in Gilpin v. Merchants' Nation-

al Bank (C. C. A.) 165 F. 607, 612, 20 L. R. A. (N. S.) 1023, 21 Am. Bankr. Rep. 429, where the court said:

"'The bankrupt who has made to a creditor, for the purpose of obtaining credit, a false statement—that is, one intentionally and knowingly untrue—is unworthy of the privilege of a discharge under the act, and the court will act upon information brought to it of such an act by any party in interest. It will be at once conceded on all hands, that such a bankrupt is unworthy, and should not receive the favor accorded by the law to the honest but unfortunate debtor.'

"Counsel for the bankrupt cites Matter of Milhoff, 40 Am. Bankr. Rep. 72, wherein the report of the special master, approved by the court, held that the person to whom the false statement in writing was given, and from whom the bankrupt obtained credit, must be a creditor at the time the objection to the discharge was made. In other words, if the bankrupt, irrespective of the extent of his guilt in obtaining money by means of a false statement in writing, should secure a release from the creditor from whom such money was received, either by means of payment, promises, or otherwise, a discharge should be granted. It is not the intent of the Bankruptcy Act (11 USCA) that the right to a discharge should be a power vested in a particular creditor, which might be bartered for a consideration, and language to this effect will be noted in the quotations above set forth. I doubt the soundness of the reasoning of the special master in the Milhoff matter, and do not find that this decision has met with approval by other courts.

"In view of these and many other similar statements of the courts, I can see no reason why the court should legislate into existence a statute of limitation, when Congress has not seen fit to create such a limit. Neither do I find occasion to apply any rule of equity, assuming the court possesses such power, in favor of this bankrupt. While it may be true that the obligations incurred with the Bank of Italy have been repaid, yet he knowingly obtained credit from the bank by the use of these two financial statements, on which the obligations to his wife were omitted. It never was the intention of his wife to make him a gift of this money, and, as found in the hearing on the objection to her claim, she demanded a note from him at one time, and he knew the money was due

and owing her, and with such knowledge intentionally and deliberately omitted to include this obligation in his financial statements. The bankrupt, by his own premeditated conduct, having been the cause of the situation in which he now finds himself, must extricate himself from his self-created difficulties, and is not entitled to either a technical or equitable ruling in his favor to accomplish that purpose.

"For these reasons, the special master is of the opinion that the composition should not be confirmed, because the bankrupt has been guilty of acts which would require the denial of his discharge."

This matter is rather perplexing to me. The only question involved is: Has the bankrupt been guilty of any act which would be a bar to his discharge in bankruptcy under the provisions of paragraph b(3) § 32, of the Bankruptcy Act (11 USCA)? Under the facts, as here presented, the authorities cited by counsel for both sides are of very little assistance.

A bankruptcy proceeding is in the nature of a proceeding in equity. The sections of the law referred to above were, in my judgment, framed as they are by the Congress from that standpoint. He who comes into a court of equity must come with clean hands. That doctrine is limited in its application, of course, to the condition of petitioner's hands in the particular matter before the court.

I do not believe that the Congress intended to bar the door to a sinner who has repented. I do not believe that the sins of a lifetime, which are wholly unrelated to a matter before a court, should be regarded by a court, unless it appear that the sinner is unrepentant and still engaged in his evil course.

As I get the facts, the false statement made by the bankrupt in 1923 and 1924 was in failing to disclose a claim of his wife, which claim the wife has successfully established in these proceedings before the bankruptcy court. I also understand that her claim is the largest single claim of any creditor.

Under these circumstances and conditions, it is clear that the dereliction of the bankrupt of former years has some relation to the matter now before the court.

For the reasons stated, the findings of the master are approved.