**FARMERS' SAV. BANK OF GRIMES, IOWA, et al. v. ALLEN.**

No. 8728.

Circuit Court of Appeals, Eighth Circuit.

May 7, 1930.

time a petition for discharge was filed by the bankrupt. Appellant, a creditor, filed specification of objection to the discharge. The court directed that the petition of the bankrupt for discharge with the specification in objection thereto be referred to a special master. The master recommended that the objections be overruled, and that the discharge of the bankrupt be granted. Exceptions were filed by appellant to the master's report, and thereafter the court set the cause for hearing and permitted appellant to again introduce its testimony in support of the objections to the discharge of the bankrupt. At the conclusion of the hearing the court overruled the objections and granted the bankrupt his discharge. This appeal is from that order.

Appellee has filed a motion to dismiss the appeal on the ground, first, that the transcript of the record was not filed within the time fixed by the rules of this court; second, that the citation in this case was not issued sixty days before the second term of this court after the appeal was taken.

The order of the District Court granting the discharge was entered on October 13, 1928. The petition for appeal and assignment of errors were filed on October 20, 1928; the appeal was allowed on October 22, 1928; the appeal bond was approved on November 28, 1928; the citation was signed and issued September 27, 1929; the transcript of the record was filed in this court on October 11, 1929. The rules of this court provide that it shall be the duty of the appellant to docket the case and to file the record thereof on or before the return day. Paragraph 5 of Rule 14 provides that "all appeals and citations must be made returnable not exceeding sixty days from the date of the signing of the citation." The return day of an appeal is thus fixed as sixty days from the time that the citation was signed. In this case the citation was signed, as above stated, on September 27, 1929. The transcript of the record was timely filed, fourteen days thereafter. There is no provision in the rules of this court which requires the citation to be signed and issued sixty days before the second term of this court after the appeal was taken. There seems to be no merit in the motion to dismiss the appeal.

Appellant urged that the discharge should be denied because, first, the bankrupt obtained an extension of credit upon a materially false statement made by him in writing; second, the bankrupt transferred and concealed his property with intent to hinder,

Guy H. Hall, of Dallas Center, Iowa, and Hiram S. Hunn, of Des Moines, Iowa (Charles E. Hunn, of Des Moines, Iowa, on the brief), for appellants.

Howard L. Bump, of Des Moines, Iowa, for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and DAVIS, District Judge.

DAVIS, District Judge.

George H. Allen, appellee, on January 23, 1926, filed his voluntary petition in bankruptcy in the District Court of the Southern District of Iowa. The order of adjudication was entered on January 26, 1926. In due

delay, and defraud his creditors; third, the bankrupt with intent to conceal his financial condition failed to keep books of account from which such condition could be ascertained. This last objection has been abandoned inasmuch as this point was not pressed either in appellant's brief or oral argument.

The transactions with which we are here concerned took place prior to the amendment to the Bankruptcy Act of May 27, 1926, 11 USCA § 32. The application for the discharge and the objections thereto were filed prior to the amendment, but the court below considered the case and entered its order subsequent thereto.

The amended act, 11 USCA 1 note, provides: "The provisions of this amendatory Act shall govern proceedings, so far as practicable and applicable, in bankruptcy cases pending when it takes effect; but as to proceedings in cases pending when this Act takes effect, to which the provisions of this amendatory Act are not applicable, such proceedings shall be disposed of conformably to the provisions of said Act approved July 1, 1898, and the Acts amendatory thereof and supplementary thereto."

 The statute contemplates that the amendment should, where possible, be applicable to actions pending at the time of its passage. The uniform rule of decisions has been that petitions for discharge should be considered in the light of the law existing at the time the court enters its order. Parrish v. City National Bank of Kearney (C. C. A. 8) 32 F.(2d) 982; Lockhart v. Edel et al. (C. C. A.) 23 F.(2d) 912; Royal Indemnity Co. v. Cooper (C. C. A.) 26 F.(2d) 585; Dreyfuss Dry Goods Co. et al. v. Morgan (C. C. A.) 23 F.(2d) 54. It is not thought, however, that it makes any difference in this case which statute, the original, or the amendment be applied, for this court has followed the rule that the obtaining of an extension of credit by means of a false financial statement was within the statute prior to amendment. Morton v. Snider (C. C. A.) 20 F.(2d) 469; Erickson v. Bicknell (C. C. A.) 28 F.(2d) 729.

The first objection to the discharge is the alleged act of obtaining an extension of credit on the faith of a false statement in writing made on July 28, 1924. The bankrupt's note at appellant's bank for the sum of $6,000 fell due at that time. In connection with the renewal of this loan the bankrupt filed with the bank a financial statement, and, thereafter, the note was renewed for a period of one year, and the bank was also given as security a third deed of trust on some farm property.

The issue presented here has to do with that portion of the financial statement in which the bankrupt set out his liabilities. The items were as follows:

| | |
|---|---|
| Accounts owed by me.............. | ...... |
| Notes owed by me without security.. | $10,045 |
| Notes owed by me with security (other than real estate or chattel mortgages).............. | 15,000 |
| Mortgages owed by me on farm property .................... | 57,500 |
| Total Liability.............. | $82,545 |

The schedules filed in the bankruptcy proceeding on January 23, 1926, showed that the bankrupt owed to creditors holding securities $61,530.78, to unsecured creditors covering accounts and notes $9,778.07, and for taxes $730, or a total indebtedness of $72,038.85. The evidence further showed that substantially all of the outstanding indebtedness at the time of bankruptcy was owing at the time the financial statement was made and delivered to the bank. It will be seen, therefore, that the financial statement disclosed the bankrupt's indebtedness to be greater by $10,506.15 than the amount of his obligations as set forth in the schedules filed eighteen months later.

As we understand appellant's position, it is not contended that the bankrupt fraudulently understated the total of his liabilities in this financial statement. It is not contended that his debts were greater than $82,545, the amount of the obligations as shown by the statement. Appellant's contention is that the bankrupt's statement that he owed $25,045, exclusive of debts secured by real estate or chattel mortgages, was materially false because he owed debts of this nature in a greater sum. This position is thus set forth in appellant's brief.

"At that time, (July 28, 1924) the bankrupt in his financial statement represented that in the items designated accounts owed, notes unsecured, notes not secured by land or chattel mortgages, he owed an aggregate total of $25,045.00. In truth and in fact, as set up in the statement of facts, at that time the bankrupt owed, exclusive of the $6000 due the appellant in those three classes of indebtedness and exclusive of real estate mortgage indebtedness, the aggregate sum of $27,747.12, and making a total indebtedness in those three classes of $33,747.12."

To support this contention the appellant states that all of the unsecured items shown in the schedules in bankruptcy were outstanding in July, 1924, that is, $9,778.07, and that to this sum should have been added certain items aggregating $24,102, making the amount of unsecured debts something over $33,000. The debts claimed to have been omitted from this group are the following: People's Savings Bank, $10,000; Grimes Savings Bank, $1,045; Seibert estate, $1,307; Valley Savings Bank, $5,750; Farmers' Savings Bank, $6,000.

The record has been carefully examined to ascertain the situation with reference to these five items on July 28, 1924, at the time the financial statement was executed. The obligation due to the People's Savings Bank was secured by what is referred to as a "collateral deed" to certain real estate. A prior incumbrance on this real estate was foreclosed, and thereafter the bank loan was unsecured. An effort has been made to determine from the record when this foreclosure took place. The bankrupt testified that this "mortgage was foreclosed a year ago last February." The record is not clear as to whether this testimony was given in the hearing before the master in September, 1926, or when the case was presented to the court in October, 1928. But if the witness so testified before the master, and that assumption is more favorable to the appellant, then the foreclosure took place in February, 1925. So that at the time the financial statement was made the bank held a deed to this real estate as security for its loan. If it be assumed that this item was by the bankrupt omitted from the list of his obligations unsecured, or secured by "other than real estate or chattel mortgages," it does not follow that the inference of fraud must be drawn. It would only mean that the bankrupt regarded a deed to real estate given as security for a loan as a mortgage. That was not only the practical effect of the transaction, but is also the law of the situation. The bankrupt was not called upon to draw nice legal distinctions in the grouping of his debts, so long as he acted truthfully and honestly, and there is absent even an intimation that the debt due the People's Savings Bank was entirely omitted.

The note of $1,045 due the Grimes Savings Bank was indorsed by a third person. The note of $1,307, due the Seibert estate is shown as an asset of that estate by an inventory filed February 25, 1924. Whether this note was outstanding in July, 1924, and whether it was an obligation of the bankrupt, are matters the record leaves in doubt. The attorney for the estate testified that the bankrupt's wife's interest in the estate was sufficient to meet her obligations to the same, thereby leaving an inference that this was not a debt of the bankrupt, but an obligation of his wife. However, the presumption will be indulged that this sum was owing by the bankrupt. The obligation of $5,750 due the Valley National Bank also bore the indorsement of third parties. The obligation of $6,000 to appellant was secured, so it is claimed, by the assignment of the life insurance policy. These four obligations, aggregating $14,102, should have been reflected in the list of debts without real estate security. Adding this sum to the amount of similar obligations taken from the schedules in bankruptcy the result will be a total of $23,880.07. The bankrupt showed a greater amount of debts of this class in the financial statement, and, consequently, there is no reason to believe that any of these items were omitted from that statement.

■■ It may be that some one, or more, of these items was not properly classified in that statement, but it is not regarded as particularly significant whether a debt was therein designated as "without security," "with security other than real estate or chattel mortgages," or secured by "mortgages on farm property." This is especially true, where, as here, there is no claim that the demands listed did not include all outstanding obligations. Fraud is hardly to be imputed to the fact that the bankrupt placed some of these items in the wrong class. Error and inaccuracy in the designation of the character and status of the obligations fails to support the charge of making "a materially false statement" for the purpose of inducing the extension of credit. The statute has reference to a statement, materially false in fact, deliberately made for the purpose of deceiving. Aller-Wilmes Jewelry Co. v. Osborn (C. C. A. 8) 231 F. 907; International Harvester Co. v. Carlson (C. C. A. 8) 217 F. 736. The financial statement given appellant by the bankrupt was not shown to have been of that character.

Neither the special master nor the court below made any finding as to whether the financial statement was false, but concurred in holding that credit was not extended in reliance thereon. In view of the conclusion reached it is unnecessary to consider this matter.

■■ Another objection urged to the discharge of the bankrupt is that he transferred

212

and concealed certain of his property with the intention of hindering, delaying, or defrauding his creditors. The amended statute requires such an act in order to be a valid objection, to have been committed within twelve months immediately preceding the filing of the petition, while the prior act limited the period to four months. The first of the two acts relied on here was the sale by the bankrupt of certain personal property. The second act relied on was the borrowing of the entire loan value of a life insurance policy while the policy was pledged to appellant.

The appellee was a farmer, and on November 13, 1924, fourteen months prior to bankruptcy, he sold certain personal property consisting of farm implements, stock, and grain, to his brother for about $2,600. Substantially all of this sum was applied on his debts. One witness testified that the value of this property was about $3,400. Inasmuch as the property was sold more than a year before bankruptcy, it would be necessary to show a continuing concealment into the period of twelve months prior to the time of the filing of the petition. In re James (C. C. A.) 181 F. 476. The witness who testified to the value of the personal property also stated that the purchaser, Lee Allen, advised him that he was going to resell the property, and that the balance over the purchase price would be distributed among the creditors. The purchaser of the property denied having made this statement, and both he and the bankrupt testified that there was in fact no such understanding. The master and the court who heard the witnesses concluded that this was a bona fide sale of the personal property for a fair consideration, and that there was no substantial evidence that as a result of this transaction the bankrupt had concealed any of his property. Deference should be paid to their conclusion. A careful examination of the record by no means indicates that error was committed in the making of this finding. On the contrary, the evidence submitted would form the basis of no other conclusion.

█ It was also contended that the bankrupt barred his right to a discharge by a transaction with reference to a life insurance policy. This policy was issued by the Register Life Insurance Company for the sum of $10,000, and was issued on the life of the bankrupt. The policy was, prior to January, 1924, delivered to and orally assigned to appellant bank as collateral security for the bankrupt's indebtedness. An officer of the bank handled this transaction, and it seems that the directors of the bank knew nothing about the policy being in the institution. The bankrupt being pressed to meet a demand at the bank, asked for the policy that he might surrender the same or obtain a loan thereon. The officer to whom the policy was delivered had severed his connection with the bank and the policy could not be located. Thereupon the bankrupt, at the suggestion of appellant, made an affidavit that the policy was lost, and upon the filing of this instrument the insurance company delivered a duplicate policy on which the bankrupt borrowed the full amount of the loan value. The money thus realized, about $115, was delivered to appellant bank in payment of an overdraft and interest. This transaction occurred in 1924, more than eighteen months prior to bankruptcy. It involves no element of withholding assets during the one-year period, in fact, it is devoid of any suggestion of concealment of property at any time. The transaction, no matter what interpretation is put upon it, can in no event amount to a valid statutory objection to the discharge of the bankrupt. This was the interpretation placed upon this matter by both the master and the court, and no other finding would be possible under the evidence.

█ The language of the statute indicates and the courts have uniformly held that the bankrupt is entitled to have the act liberally construed in his favor. He is entitled to a discharge, unless the evidence clearly shows that he has committed one or more of the acts named in the statute as precluding the right to be discharged. The burden of proof is upon the objecting creditor to establish the fact that the bankrupt has been guilty of such conduct as should foreclose to him the relief sought. Bank of Monroe v. Gleeson (C. C. A. 8) 9 F.(2d) 520. The burden has not been met in this case.

The appellee's motion to dismiss the appeal is overruled, and the decree below is affirmed.