**Jerome SHAINMAN, Appellant,**

v.

**SHEAR'S OF AFFTON, INC., Appellee.**

**No. 18749.**

United States Court of Appeals
Eighth Circuit.

Nov. 17, 1967.

Richard Marx, of Blumenfeld, Kalishman, Marx & Tureen, St. Louis, Mo., for appellant and filed brief.

J. Leonard Schermer, of Shifrin, Treiman, Schermer & Susman, St. Louis, Mo., for appellee; Thadeus F. Niemira, St. Louis, Mo., of the same firm was with him on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal from an order of the United States District Court affirming, without opinion, a Referee's order in bankruptcy denying a discharge of Jerome Shainman, the bankrupt. The Referee found that Jerome Shainman, "[W]hile engaged in business * * *

as an executive of a corporation [Shainman & Company, Inc.], obtained for such business money or property on credit * * * by making or publishing or causing to be made or published * * * a materially false statement in writing respecting * * * the financial condition of such * * * corporation." Bankruptcy Act § 14c(3), Ch. 541, 30 Stat. 565 (1898), (amended by 79 Stat. 646 (1965) as amended, 11 U.S.C. § 32c(3) (1966)). We affirm.

The undisputed facts as found by the Referee were substantially as follows:

Shainman & Company, Inc., a wholesale toy distributor, entered into a three-year factoring agreement with Receivables Finance Corporation on February 1, 1962. It provided that R.F.C. would make loans to Shainman & Company up to sixty percent of the cost of inventory assigned or pledged but not to exceed a total of $550,000. Jerome Shainman, president, chief executive officer, treasurer and a major stockholder of Shainman & Company negotiated the agreement. He and his wife, vice president and treasurer of the company, personally guaranteed the loans.

Pursuant to an understanding between the parties, Shainman & Company furnished monthly inventory reports to R.F.C. The January 31, 1963, report showed an inventory of $751,981. On March 31, 1963, Shainman & Company gave R.F.C. an adjustment report indicating that in accordance with a physical inventory taken on January 31st of that year, the inventory should be increased by $189,975. It also furnished R.F.C. with an eighty-two page detailed list of the items comprising the inventory as of that date. It showed the correct value of the inventory to be $941,757.[1]

Certified public accountants hired by R.F.C. spot-checked the January 31, 1963, inventory count and prices. There is no indication in the record that this check uncovered the shortage later found to exist.[2]

The monthly inventory reports were made on two sheets. A white one contained the additions to inventory and the balance after such additions. The dollar amount of additions was determined by reporting new purchases at cost. It contained the following affirmation:

"The undersigned does hereby certify that the representations set out in the foregoing schedule are true and correct, that Receivables Finance Corporation in connection with monies which it is either advancing or lending to the Dealer is to rely upon the truthfulness of the foregoing representations, and that in connection with its written contract with the Dealer, Receivables Finance Corporation will, on the basis of the representations made herein, advance or lend monies to the Dealer; and the undersigned also represents that the above-described items of property deposited with the named warehouses as described in this shedule and the balances reflected therein are free and clear of any and all liens or claims whatsoever, that the Dealer has absolute and complete title to the same and the right to transfer good title of the same."

The pink sheet contained a schedule of inventory withdrawals. The dollar amount of withdrawals was computed by Shainman & Company by taking eighty-five percent of sales.[3] The following affirmation appeared on it:

"The undersigned does hereby certify that the foregoing schedule represents

---

1. We note that the sum of the balance appearing on the January 31, 1963, report and the March 31st adjustment report is $200 higher than the detailed inventory list.

2. Apparently, the accountants hired by Shainman & Company were also on hand

for the taking of the January 31, 1963, inventory.

3. The sales were reduced by fifteen percent so as to allow for the markup over cost. However, fifteen percent was a conservative estimate since prior records indicated a markup of twenty-two percent.

a true schedule of the withdrawal therein described and of the balances remaining in said premises; that the withdrawals therein described are made only for the purpose of sale in Dealer's normal course of business * * *."

On October 9, 1963, Shear's of Affton, Inc., the objecting creditor, lent Shainman & Company $10,000. The president, Harry Shear, who negotiated the loan, was given a copy of the January 31, 1963, inventory. Shear's of Affton was apparently secured, at least in part, by inventory.[4]

Based on the monthly inventory reports received by R.F.C. from Shainman & Company, the inventory as of January 31, 1964, had a value of $800,559. A physical inventory, however, as of that date, established its actual value at $172,276.79, a fraction of the value shown in the monthly inventory reports.

On March 4, 1964, an involuntary petition in bankruptcy was filed against Shainman & Company, and it was adjudicated a bankrupt on March 20, 1964. On November 27, 1964, Jerome Shainman was adjudicated a bankrupt upon the filing of a voluntary petition. The schedule of debts in his petition listed $166,683.37 of unsecured claims,[5] consisting primarily of obligations resulting from his personal guarantee of Shainman & Company's debts.

Shear's of Affton objected to the discharge of Jerome Shainman on three specifications; only two of which are material here:[6] (1) that Shear's of Affton loaned Shainman & Company $10,000 in reliance on the January 31, 1963, financial statement of Shainman & Company, which was false and published by

Jerome Shainman while an officer of Shainman & Company, and (2) that R.F.C. extended credit in reliance on false monthly inventory statements also published by Jerome Shainman.

The Referee found for the objector on each of the two specifications. His order denying discharge was affirmed by the District Court without written opinion.

■ The bankrupt on appeal asserts error in regard to both specifications. Since we conclude there is no question that the denial of discharge must be upheld in regard to the specification regarding R.F.C., we need not consider the many questions relating to the Shear's of Affton loan. A finding that the bankrupt obtained credit based on a materially false statement meeting all other requirements under § 14c(3) of the Bankruptcy Act will bar discharge of all debts, not just the debts of the creditor who has been defrauded. Compare, § 14c(3) with § 17a(2), Bankruptcy Act, supra. Furthermore, it need not be shown that the objecting creditor (in this case, Shear's of Affton) relied on the statement; and a creditor can object to discharge on the grounds that another creditor was defrauded. E. g., In re Haggerty, 165 F.2d 977 (2d Cir. 1948); In re Ernst, 107 F.2d 760 (2d Cir. 1939); Sadler v. Hirshberg Bros., 23 F.2d 245 (6th Cir. 1928); In re Mayer, 139 F.Supp. 372 (E.D.Wis.1956); In re Johnson, 114 F.Supp. 396 (N.D.Tex.1953); Matter of Pine, 40 F.Supp. 287 (E.D.N.Y.1941); In re Weinstein, 34 F.2d 964 (D.C.S.D. Cal.1929), Collier, Bankruptcy §§ 14.35, 14.42.

In this appeal, the bankrupt alleges that the objector failed to prove: (1)

---

4. Harry Shear, at one point in his testimony, indicated that the inventory would be "collateral."

5. The schedule of debts in Shainman's petition listed $166,683.37 of unsecured claims, all of which were incurred by guaranteeing Shainman & Company's

debts except for $27,402.84 that was owing to Shainman & Company itself.

6. The third specification related to an alleged fraudulent statement given to Dun & Bradstreet. However, no evidence was entered on this specification, and we are not concerned with it on this appeal.

that the monthly inventory reports were "financial statements" within the meaning of § 14c(3) of the Bankruptcy Act, (2) that the bankrupt published these written statements, (3) 'that the respective statements were false, (4) that the bankrupt's intent was fraudulent, and (5) that either R.F.C. or Shear's relied on the respective written statements.

With respect to the fact questions raised in (2) (3), (4) and (5), we apply the established rule that the Referee's findings are to be accepted unless clearly erroneous. American National Bank and Trust Co. of Chicago v. Bone, 333 F.2d 984 (8th Cir. 1964); Teasdale v. Prosperity Co., 290 F.2d 345 (8th Cir. 1961); Boyce v. Chemical Plastics, 175 F.2d 839 (8th Cir. 1949); In re Slocum, 22 F.2d 282 (2d Cir. 1927); Rule 52(a), Fed.R.Civ.P., 28 U.S.C.A.; General Orders in Bankruptcy No. 47, 11 U.S.C.A. following § 53.[7]

Section 14c of the Bankruptcy Act requires that a bankrupt be given a discharge unless the court is satisfied that the bankrupt committed an act which bars discharge. Gross v. Fidelity & Deposit Co. of Maryland, 302 F.2d 338 (8th Cir. 1962); Becker v. Shields, 237 F.2d 622 (8th Cir. 1956); Farmers' Sav. Bank of Grimes, Iowa v. Allen, 41 F.2d 208 (8th Cir. 1930). In making a determination as to whether the bankrupt has committed an act barring discharge, effect must be given to the last proviso in § 14c of the Bankruptcy Act which provides:

" * * * if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which * * would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

The implications of this amendment are pointed out in Collier on Bankruptcy, § 14.12:

" * * * The burden which shifts now upon a showing of reasonable grounds is not a *burden of going forward* with the evidence requiring the bankrupt to explain away natural inferences, but a *burden of proving* that he has not committed the objectionable acts with which he has been charged; the bankrupt now has the risk of ultimately persuading the court that the allegations in the specifications are untrue once the objector has shown that there are reasonable grounds for believing that the bankrupt has committed one or more of the acts enumerated in § 14c. If the evidence is in a state of substantial equilibrium, the discharge must be denied since the bankrupt has failed to carry his burden of proof."

We turn to a consideration of the specific issues raised by the petitioner:

I. *The inventory reports were financial statements within the meaning of § 14c(3) of the Bankruptcy Act.* The bankrupt argues that the monthly inventory reports of Shainman & Company, sent to R.F.C., were not statements reflecting the financial condition of that corporation and not within the purview of § 14c(3) of the Act. We do not agree. The sole requirement of the statute is that the statement be in writing and that it be in respect to the financial condition

7. The bankrupt seeks support from the first clause of § 14c which provides that: "The court shall grant discharge *unless satisfied* that the bankrupt has [committed one of several acts specifically barring discharge]." (Emphasis added.) That first clause does not affect our duty on appeal to apply the "clearly erroneous" rule. The bankrupt relies on language in Gross v. Fidelity & Deposit Co. of Maryland, 302 F.2d 338 (8th Cir. 1962), paraphrasing the first clause of § 14c of the Bankruptcy Act. However, the bankrupt fails to note that this Court, nevertheless, applied the clearly erroneous rule. Id. at 339.

of the corporation. A written statement purporting to set forth the true value of a major asset of a corporation, its inventory, is a statement respecting the financial condition of that corporation. In re Ellerbee, 198 F. 952 (N.Ga.1912). Cf., Mau v. Sampsell, 185 F.2d 400 (9th Cir. 1950); Albinak v. Kuhn, 149 F.2d 108 (6th Cir. 1945); Lockhart v. Edel, 23 F.2d 912 (4th Cir. 1928); In re Sine, 25 F.Supp. 800 (N.D.W.Va.1938).

There is nothing in the language or legislative history of this section of the Act to indicate that it was intended to apply only to complete financial statements in the accounting sense. E. g., In re Sine, supra.

In *Sine*, a bankrupt seeking credit wrote a letter to a creditor in which he listed some, but not all, of his existing debts. In holding that this was a statement in respect to his financial condition, the Court stated:

" * * * The master does not make a finding as to the falsity of the statement in question, but does find that the letter of June 23 is not a 'financial statement' within the purview of the act. I can not agree with the master in this respect. While the statement is not a 'financial statement' in the sense that these words are commonly used, giving fully all assets and liabilities, it is, nevertheless, a statement 'in respect to his financial condition.' "

Id. at 801.

II. *The bankrupt caused the inventory reports to be published.* The bankrupt urges that the Referee erred in finding that he published or caused to be published the monthly inventory reports. In support of this position, he argued that he "was not even asked if the statements were prepared at his direction or request;" and that he did not actively participate in the preparation or publication of the monthly inventory reports.

■ We do not believe the Referee's findings that the bankrupt caused the reports to be published to be clearly erroneous. (1) The bankrupt signed a number of the monthly inventory reports. (2) The bankrupt negotiated the loan, authorized the bookkeeper to prepare and submit the monthly reports, and was fully aware of the fact that the company of which he was the chief executive officer and principal stockholder was receiving loans on a monthly basis. (3) The January 31, 1963, statement contained the following statement: "The merchandise inventory was taken by the management and certified to us [the accountants] by an officer of the company as having been taken at actual count and measured, and priced at the lower of cost or market price. The figures are accepted by us as submitted."

■ In the alternative, the above facts established reasonable grounds for believing that the bankrupt did in fact cause the statements to be published. This showing was sufficient to shift the burden of proof to the bankrupt. Gross v. Fidelity & Deposit Co. of Maryland, supra; Becker v. Shields, supra; Farmers' Sav. Bank of Grimes, Iowa v. Allen, supra. It was sufficient to require the bankrupt to prove that he had not in fact authorized the preparation of the statements and that he had not caused them to be delivered to R.F.C. This he failed to do. His testimony and that of the other witnesses called on his behalf was confined to an attempt to show that he did not personally take part in the actual taking of the inventory or preparation of the statements.

■ III. *The financial statements were false.* The bankrupt urges that the Referee erred in finding that the financial statements were false. We do not agree.

The bookkeeper of R.F.C. testified that she attempted to reconstruct Shainman & Company's inventory by taking the January 31, 1962, inventory as a base, adding purchases and deducting sales. By so doing, she computed that the January 31, 1963, inventory was substantially less than had been reported by Shainman

& Company to R.F.C., and that the monthly inventory reports were also false.

This is indicated by the following schedule:

| Source | Description | Units on Hand 1/31/62 and Purchased During Fiscal Year | Units Reported to be on Hand 1/31/63 |
|---|---|---|---|
| Absorene Mfg. Co. | DL200 | 919 | 1,263 |
| Princess Jane | 700 | 120 | 480 |
| Princess Jane | | 288 | 944 |
| Duncan Yo-Yo | 50 | 8,640 | 15,464 |
| Sunwell | Toodaloop | 4,062 | 10,796 |
| T-Shirts | | 4,800 | 19,200 |
| International Trade Mart | Radio | 142 | 440 |
| Hamilton Steel Co. | 93 | 244 | 3,208 |
| Keener | Slide Proj. | 600 | 1,312 |
| Hamilton Steel Co. | 804 | 1,152 | 1,704 |

Also analyzed in detail was a sale of a group of Lionel toys to the Famous-Barr Company, during fiscal year 1963. The January 31, 1963, inventory listed 23,346 units with a value of $35,492,29. Between January 31st and April 18th, one unit was sold for about $5.00 or $6.00. On April 18th, Shainman & Company appeared to close out their Lionel toys in a sale to Famous. The business records of Shainman & Company indicated 7,147 units were sold for $3,900. There were no other sales of Lionel toys found in Shainman & Company's records for that year. The January 31, 1964, inventory showed no Lionel toys.

Using this method of analysis, the bookkeeper was able to account for about one-half of the inventory shrinkage. She was, however, unable to account for the remaining shortage, as was the bankrupt. The bankrupt's testimony attempting to explain the apparent shortage in the inventory was summarized by the Referee:

"Asked if he could account for the inventory shrinkage [from $800,000] to $172,000.00 as of January 31, 1964, he answered no, just the things that were covered in Court. He was asked if, having heard the testimony of Beulah Jennewein in her attempt to account for the shortage, did he have any explanation to make he answered 'No, I am not sure her explanation is correct.' Asked if he had any corrections to make in it he answered 'No'. He admitted that no one else other than himself handled the financing of the company."

The objector established a reasonable ground for believing the statements to be false, and nothing to rebut this conclusion was presented by the bankrupt.

IV. *The necessary intent was established.* To bar a discharge, a statement must not only be false but it must be intentionally so. E. g., Schapiro v. Tweedie Footwear Corporation, 131 F.2d 876 (3d Cir. 1942). While intent can be inferred from the fact that a bankrupt caused to be published what he knew should have shown to be false or should have known to be false, Yates v.

Boteler, 163 F.2d 953 (9th Cir. 1947); International Shoe Co. v. Lewine, 68 F.2d 517 (5th Cir. 1934), it is not necessary for us here to rely on inferences. The Referee concluded:

> "That this bankrupt, president of the bankrupt corporation, who handled all the financing for the corporation had practically no knowledge of its inventory situation, as his testimony professes, is beyond belief and this Court does not believe it."

His conclusion is fully supported by the evidence. Cf., In re Savarese, 209 F. 830 (2d Cir. 1913); In re Schwartz & Co., 201 F. 166 (D.C.S.D.N.Y.1912).

■ V. *The necessary reliance was established.* The bankrupt's argument that R.F.C. did not rely on the inventories is not supported by the record. The fact that the R.F.C. loan was secured by inventory indicates that it relied on the amount of inventory. Furthermore, there was direct testimony by the bookkeeper of R.F.C. that that company relied on the monthly statements. The bankrupt argues that the bookkeeper could not testify as to reliance because she did not have authority to actually loan the money. However, she was often present when the advances were negotiated, and had she known that the inventory was only $172,000 instead of $800,000, the Referee could reasonably have inferred that that would have had an effect on negotiations.

Furthermore, this case comes within the rule announced in Morris Plan Industrial Bank of New York v. Parker, 79 U.S.App.D.C. 164, 143 F.2d 665 (1944). There it was held that reliance could be inferred where the bankrupt made a false statement on a loan application form that recited that the creditor would rely on the information given. Here, too, the inventory reports contained a similar affirmation. Supra, p. 35.

In conclusion, the record indicates that the denial of discharge must stand. The Referee's findings are not clearly erroneous.

Affirmed.