In re Donald J. CLAUSEN, dba Donald J. Clausen D.D.S., M.S., Debtor.

CONTI–COMMODITY SERVICES, INC., Plaintiff,

v.

Donald J. CLAUSEN, Defendant.

Bankruptcy No. 4–83–1966.
Adv. No. 4–84–50.

United States Bankruptcy Court, D. Minnesota.

Oct. 2, 1984.

Connor Schmid, of Mackall, Crounse & Moore, Minneapolis, Minn., for plaintiff.

Frank Faulhaber, of Twin Cities Attorneys, Roseville, Minn., for defendant.

Leroy Werges, Minneapolis, Minn., appeared as Trustee of the estate of Donald J. Clausen.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

MARGARET A. MAHONEY, Bankruptcy Judge.

The above-entitled adversary proceeding came on for trial before the undersigned on August 19, 1984. The Plaintiff sought to preclude a discharge in bankruptcy to Defendant under 11 U.S.C. § 727(a)(2)(A). For the reasons cited below, Plaintiff's cause of action against Defendant succeeds.

### Facts

1. Defendant is a licensed dentist. He received his Doctorate of Dental Science in 1969 from the University of Minnesota. He served as a dentist in the United States Navy from 1969 to 1975. In 1975 he entered private practice in Richardson, Texas. He also commenced teaching at Baylor University. In 1982, Defendant sold his Texas dental practice. He moved to Minnesota in January of 1983 and started a dental practice in Minnesota. He also is a clinical instructor at the University of Minnesota Dental School.

2. In 1969, Defendant married Marjorie Clausen. She is a trained X-ray technician. The Defendant and his wife had two children in 1972 and 1974 respectively. Mrs. Clausen worked part time after the birth of their children.

3. Defendant moved to Minnesota no later than January, 1983.

4. In April of 1983, Marjorie Clausen commenced a divorce proceeding against Defendant in Texas. On June 28, 1983, Marjorie Clausen obtained a decree of divorce from Defendant.

5. The divorce decree, which was granted by default to Mrs. Clausen, awarded the homestead of the parties at 1006 Serenade Lane, Richardson, Texas, to Mrs. Clausen. Defendant received only his personal property and such property and bank accounts he then had in possession. Defendant also was obliged to pay all of the parties' "community indebtedness".

6. Defendant, in March of 1983, valued all real estate equities he owned at $115,000. There was an approximate $40,500 mortgage on the parties' homestead in Texas. If the Virginia property of the parties was worth $13,500, the equity in the homestead was $101,500. Therefore, the homestead was valued at approximately $140,000 with a $40,500 mortgage and approximately $100,000 in equity.

7. Defendant per his testimony, borrowed $23,000 from his wife in 1980 to pay an approximate $28,000 margin account loss to Kelly Associates, Ltd., a commodities broker. Marjorie Clausen had received an inheritance from her family in 1979 or 1980, which she kept in a separate property account per advice of a lawyer. Defendant borrowed $23,000 from his wife's separate property account. Defendant and his wife had no written promissory note. Defendant had attempted small repayments to his wife before the 1983 divorce of the parties but had discontinued them.

8. After the divorce, Mrs. Clausen sold the house. Defendant does not know what the sale price was. The purchase agreement he signed, however, reveals that the home sold for $110,000. With a $40,000 mortgage, the equity in the house was about $70,000. Defendant received $5,000 from his former spouse sometime after the

sale. Defendant does not remember what he did with the money. Defendant does not know why he got $5,000, nor whether the money was from the sale of the house. He and Mrs. Clausen had orally agreed that she would be paid the $23,000 loan first from the proceeds of the sale of the house per Dr. Clausen's testimony. If anything was left, Defendant was to receive some. He assumed the $5,000 was money paid to him after Mrs. Clausen repaid the $23,000 loan she made to Defendant.

9. Defendant didn't know what interest, if any, he had in the homestead under Texas law. He was unrepresented in the divorce proceeding. He felt that the loan his wife made to him should be repaid per his agreement with her, and that therefore the house equity was hers.

10. Defendant, at the time of the divorce, had over $50,000 in debts and very few assets except any equity Defendant may have had in the Texas homestead and the Virginia real estate.

11. On December 5, 1983, Defendant filed a bankruptcy petition in Chapter 7. At that time, he had over $100,000 in debts and under $20,000 in assets.[1]

12. Debtor answered questions 14a and 14b on the "Statement of Financial Affairs for Debtor Engaged in Business" as follows:

14. Transfer of Property

a. Have you made any gifts, other than ordinary and usual presents to family members and charitable donations, during the year immediately preceding the filing of the original petition herein? Answer: No

b. Have you made any other transfer, absolute or for the purpose of security, or any other disposition which was not in the ordinary course of business during the year immediately preceding the filing of the original petition herein? Answer: No

13. Defendant stated in his deposition of March 12, 1983, that his wife gave him no consideration for his interest in the Texas home of the parties.

*Discussion*

Plaintiff, Conti-Commodity Services, Inc. (Conti) brought this action objecting to Debtor's discharge under 11 U.S.C. § 727(a)(2)(A) which states:

(a) The court shall grant the debtor a discharge, unless—

\* \* \* \* \* \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of filing of the petition; ....

Plaintiff alleges that Debtor's default in the Texas divorce proceedings, whereby his wife obtained sole fee title to the parties' homestead was a transfer of property fulfilling the criteria of 11 U.S.C. § 727(a)(2)(A).

There are four basic elements to be proved in a § 727(a)(2)(A) objection to discharge. *In re Reed,* 18 B.R. 462, (Bkrtcy.,E.D.Tenn.1982). They are:

1) a transfer of property has occurred;

2) it involved property of the debtor;

3) the transfer was within one year of the filing of the petition;

4) the debtor had, at the time of the transfer, intent to hinder, delay or defraud a creditor.

In his answer, Debtor admits he allowed a default divorce to be entered in Texas which awarded the parties' homestead totally to his wife within one year prior to the filing of his bankruptcy petition. 11 U.S.C. § 101(41) defines a "transfer" as "every mode ... voluntarily or involuntarily of ... parting with ... an interest in property." The loss of title to homestead property by means of a divorce decree is a "transfer".

---

**1.** Defendant testified that the Virginia real estate was actually worth $13,500.00, not $3,500.00 as he had listed in Schedule B–1 of his bankruptcy petition.

The case of *In re Lange*, 35 B.R. 579 (Bkrtcy., E.D.Mo.1983) deemed it a transfer for purposes of finding a fraudulent "transfer" under 11 U.S.C. § 548. Also in a fraudulent transfer situation, the case of *Britt v. Damson*, 334 F.2d 896 (9th Cir. 1964) deemed a divorce decree a "transfer". See also *Gray v. Snyder*, 704 F.2d 709 (4th Cir.1983) and *In re Chappel*, 243 F.Supp. 417 (S.D.Cal.1965) which, although decided on other grounds, assume a divorce decree is a "transfer". In this case, the Debtor allowed entry of a default divorce decree against him. This inaction evidences his intent very clearly. In a contested case, intent might be less clear. Conti has sustained its initial burden of proof in regard to the first three elements necessary to sustain an objection to discharge under 11 U.S.C. § 727(a)(2).

The fourth element to be proved is the difficult issue here—"intent to hinder, delay or defraud" a creditor. The purpose of § 727(a)(2)(A) is to deny discharge to a debtor intending to defraud creditors who transfers property that would otherwise be property of the estate. *In re Connor*, 32 B.R. 626 (Bkrtcy., E.D.Penn.1983); *In re Butler*, 38 B.R. 884 (Bkrtcy., Kansas 1984).

Debtor argues that 1) his transfer was not a transfer that would have been property of the estate since Debtor could have claimed it as exempt homestead property and 2) that Debtor believed he had no equity interest in the property anyway. He did not give inadequate consideration and, therefore, even if the transfer occurred, it was without fraudulent intent.

■ As to contention number 1, Debtor's claim that any interest he had in the Texas homestead property was exempt is incorrect. Debtor was a Minnesota resident when he filed his petition in bankruptcy. The Texas property was his ex wife's homestead as the parties were divorced at the time of the Debtor's petition. In order to file bankruptcy in Minnesota, Debtor had to be a Minnesota resident, and so

declared, under penalty of perjury, in his bankruptcy petition. Any homestead right that Debtor had attached then only to his share of the proceeds of sale of his Texas home. In both Minnesota and Texas, proceeds of sale of a homestead are only exempt assets if reinvested within a statutory time period in another home.[2] No evidence that Debtor's share of the homestead proceeds were invested or were intended to be reinvested in a home in Minnesota was offered. In fact, Debtor stated that he didn't recall what he did with the $5,000 he received from his ex wife (which money may or may not have come from sale of the homestead). Therefore, in either case, Debtor failed to prove he had any homestead exemption available to him.

There are many presumptions Courts have used to find fraud. The Court in *In re May*, 12 B.R. 618 (Bkrtcy., N.D.Fla.1980) compiled a listing of these "badges of fraud" as follows:

1) the lack or inadequacy of consideration;

2) the family, friendship or close associate relationship between the parties;

3) the retention of possession, benefit or use of the property in question;

4) the financial condition of the party sought to be charged both before and after the transaction in question;

5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

6) the general chronology of the events and transactions under inquiry.

Questions have been raised in this case as to proof of criteria 1) and 2). Proof of actual fraud can be drawn "from convincing evidence of extrinsic fraud". *In re Rubin, supra*, continuing to explain the necessary proof of fraud required, stated:

---

**2.** M.S.A. 510.07 (Proceeds from homestead sale exempt for one year; Tex. Civil Statutes Art. 3834 (eff. through 12/31/83) and Texas Property Code, Acts 1983, 68th Leg., p. 3475, ch. 576, § 41.002 (eff. 1/1/84) (Proceeds of voluntary sale exempt for six months).

Further, where valuable property has been gratuitously transferred, or transferred for inadequate consideration, a presumption arises that such transfer was accompanied by the actual fraudulent intent necessary to bar a discharge. At page 441.

Although Debtor states that his wife in a divorce proceeding cannot be termed a family member for inferring fraud, his two children who also indirectly benefited by the award of the homestead to his wife are "family". Therefore, it would appear to me that "badge of fraud" number 2 is evidenced here.

As to criterion number 1), Debtor offered evidence (his own oral testimony) at trial that he allowed the house to be awarded to his wife without contest in their Texas divorce because of a debt he owed to his wife. However, Debtor failed to prove how he calculated that he had no interest in the property over and above the amount of the debt to his wife. Debtor valued the parties' equity in property at approximately $100,000 in his March, 1983 financial statement. Debtor had no idea what his wife sold the homestead for, or what she netted from the sale after the divorce, by his testimony. However, the purchase agreement he signed states that the house sold for $110,000, leaving actual equity of approximately $70,000. If Debtor owed his wife $23,000, he still has not explained why he allowed $12,000 of his one half interest in $70,000 to be awarded to his spouse without contest.[3] When asked if, in regard to the divorce, Debtor had cared what happened to his property, he responded "not really". Debtor's lack of concern and vagueness constitute extrinsic evidence of fraud and establish a presumption of a transfer for inadequate consideration.

Another extrinsic proof of fraud comes from the fact that Debtor failed to list the transfer of the homestead to his wife on his Statement of Financial Affairs. If Debtor's intent was not concealment, it is un-

clear why he did not list the transfer of the homestead in his bankruptcy petition. Debtor's statement in his deposition which was used to impeach him at the trial that his wife gave him no consideration for his share of the property also makes Dr. Clausen's testimony less credible.

Bankruptcy Rule 4005 requires the Plaintiff, in this case, Conti, to go forward with the initial burden of proof of its objection to Debtor's discharge. Case law states that the creditor need only prove its case by a preponderance of the evidence. *In re Shults*, 28 B.R. 395 (Bkrtcy.App. 9th Cir.1983); *Farmers Cooperative Association of Talmadge, Kansas v. Strunk*, 671 F.2d 391 (10th Cir.1982). The Plaintiff met its burden of proof under Rule 4005 in this case. This then shifted the burden of proof to the Debtor to explain away the natural inferences to be drawn from the facts Conti presented. *Shainman v. Shear's of Affton, Inc.*, 387 F.2d 33 (8th Cir.1967); *In re Bateman*, 646 F.2d 1220 (8th Cir.1981). I think that Debtor failed to carry his burden of proof. Debtor presented no documentary evidence of any notes to his wife or payments to her to establish that there was in actuality a debt. Plaintiff's deposition testimony contradicted his testimony at trial. Debtor failed to call his ex wife as a witness to verify his testimony. Debtor stated that there was no transfer at all in the year preceding bankruptcy in his bankruptcy Statement of Affairs. Debtor could not remember at all any of the values in regard to the homestead sale. Debtor could not remember what money he received from his wife in regard to the sale of the homestead. He could not remember what he did with the money if he did receive it. Debtor's answers were vague and indefinite in regard to many issues a man of his education and intelligence normally would be knowledgeable about.

## CONSOLIDATION ISSUE

Debtor argued that trial of this adversary proceeding and an adversary proceed-

---

**3.** Debtor received $5,000 from his former wife at some time after the sale. Debtor doesn't know if this money came from the house sale or

not and never inquired about the money, per his testimony.

**46**

ing also under 11 U.S.C. § 727(a)(2)(A) based upon the same facts instituted by the Trustee, Adv. No. 4–84–81, should be consolidated and tried together in this proceeding. Since I am finding that Conti's objection to discharge is sustained, this issue is moot.

IT IS THEREFORE ORDERED, that Plaintiff's objection under 11 U.S.C. § 727(a)(2)(A) to Defendant Donald J. Clausen's discharge is sustained.