**KANSAS FEDERAL CREDIT UNION,**
Appellant,

v.

**Lauren L. NIEMEIER, Appellee.**

**No. 5139.**

United States Court of Appeals
Tenth Circuit.

Oct. 14, 1955.

Rehearing Denied Nov. 12, 1955.

288

Laurence S. Holmes, Lawrence, Kan., and T. L. O'Hara, Wichita, Kan., for appellant.

Don W. Noah and Ralph H. Noah, Beloit, Kan. (Wilmer Goering, Hillsboro, Kan., was with them on the brief), for appellee.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

HUXMAN, Circuit Judge.

Appellee, Lauren L. Niemeier, filed a voluntary petition in bankruptcy. Thereafter, in due course he was adjudged a bankrupt and his estate was regularly administered in the bankruptcy court. The Kansas Federal Credit Union, appellant, herein, filed a claim against his estate in the amount of $3,970 and interest. At the appropriate time, it filed an objection to the bankrupt's discharge. A hearing was had by the referee at which testimony was heard on the objection to the discharge. In due course the referee discharged the bankrupt. On petition for review, the District Court for the District of Kansas affirmed the referee. This appeal followed.

Four assignments of error are urged for reversal. They are: (1) The bankrupt did not keep adequate records and what records were kept were not turned over to the trustee; (2) the bankrupt did not disclose the extent of his property but rather concealed it with intent to defraud his creditors; (3) the bankrupt failed to disclose the full legal relationship between him and his father; and (4) the bankrupt caused to be made a materially false financial statement upon which the appellant extended the credit.

While it is urged that the bankrupt did not keep adequate records, the emphasis is on his alleged failure to turn his books and records over to the trustee. Without going into detail, we are satisfied from the record that the

bankrupt kept records sufficient to support the referee's conclusions.[1]

 Appellant's claim that the bankrupt refused or failed to deliver his books to the trustee finds no factual support in the record. The burden rested on the objecting creditor to establish by competent evidence at the time of the hearing on its objection that this charge was true. Appellant relied upon two letters to support this assignment. One is a copy of a letter written by Attorney O'Hara, under date of March 24, 1954, addressed to Harold A. Sigle, the Trustee, inquiring if the bankrupt had turned over his books to the trustee, and the other a copy of a reply thereto by the trustee under date of April 1, 1954, stating that the trustee had not received the books, although he had submitted several requests for the same. But these letters were not introduced in evidence before the referee. In fact, they could not have been introduced because neither was in existence at the date of the hearing. The hearing before the referee was held on January 6, 1954, and the letter by O'Hara to the trustee was not written until March 24, 1954, and the reply thereto until April 1, 1954. There is no evidence that these letters were ever introduced even before the court on petition for review. All the record shows is that they appear in the file, but they were not officially marked as exhibits, and how they got there is unexplained. Under these circumstances they do not constitute evidence. Furthermore and in any event, the testimony of the bankrupt was that when he first contemplated bankruptcy he consulted an attorney and turned all his books and papers over to his attorney and did not see them there-

after. This explanation was sufficient to support the referee's conclusion that the failure to get the books into the trustee's hands was not sufficient to compel him to refuse a discharge from the debt. Under the Act, the trustee is vested with a considerable discretion in determining whether a failure to literally comply with the statutory requirement that books be turned over under the circumstances of the case be such as to deny a bankrupt a discharge.[2]

 Neither is the charge sustained that the bankrupt failed to disclose all his property in an attempt to defraud creditors. The facts are that the bankrupt was a tenant farmer, farming 720 acres of land owned by his father. He and his father were in partnership with respect to a herd of cows belonging to his father. In addition to this herd, the bankrupt also had a dairy herd. Under the partnership arrangement, the bankrupt shared with his father in the increase of the cow herd, but the father did not share in the dairy herd. There was a discrepancy between the number of cattle and calves listed by the bankrupt and the number found by the trustee when he checked the herd. It is without dispute that the bankrupt drove a long distance from Pratt, Kansas, where he was then working, to his father's farm to meet the trustee to help him to list the cattle belonging to him. The record is without dispute that he cooperated fully in attempting to procure a correct list of the cattle in which he had an interest. The tally made by the trustee showed fewer calves than were listed by the bankrupt, and it is also asserted that the trustee found more cows than were listed by the bankrupt. But the evidence establishes

1. Failure to keep records is not an absolute bar to a discharge. It is only when a referee finds an attempt to conceal or failure to keep records not justified under the circumstances that he is warranted in entering an order refusing to grant a discharge. 6 Am.Jur. Bankruptcy Sec. 698; Texas National Bank of Beaumont v. Edson, 5 Cir., 1939, 100 F.2d 789; In re Rios, D.C.S.D.N.Y.1939, 27 F.Supp. 744; In re Nordheim, 2 Cir., 1935, 76 F.

2d 888; In re Block, D.C.S.D.N.Y.1939, 29 F.Supp. 110.

Neither does the failure to produce books absolutely require that the bankrupt be not discharged. In re Wilson, D.C.S.D.N.Y.1937, 19 F.Supp. 807–811, affirmed per curiam, 2 Cir., 1938, 95 F.2d 1023.

2. See 11 U.S.C.A. § 32, sub. c.

that calves were considered as cows by the bankrupt after they had reached a certain age. The evidence further supports the conclusion that a number of the calves listed by the bankrupt had graduated into the cow class between the filing of the petition in bankruptcy and the date when the trustee and the bankrupt met at the farm.

Neither is the assertion that the bankrupt failed to reveal the full relationship existing between him and his father supported by such convincing evidence as to warrant us in overturning the considered judgment of the referee, after a hearing in which the witnesses appeared before him and the testimony was taken in open court. We see nothing in the evidence relating to this phase of the case indicating that the bankrupt tried to conceal or distort that relationship for his personal gain or to hinder, defraud or delay his creditors.

The most serious question is with respect to the financial statement submitted to the appellant when the bankrupt obtained his loan from it. It is claimed that this statement is false in two respects; that therein the bankrupt stated that he owned 720 acres of land, and also failed to list some of his creditors, when in fact he owned no land and had two such creditors, to one of whom he owed a considerable sum. The application statement upon which the bankrupt got the loan and which was filled out originally entirely by himself was headed as follows: "I am indebted to the following creditors (list all debts such as doctor bills, installments, loans, etc. . . ..)" Following this statement appeared a number of lines for listing such creditors, and lines for the amount owing to each. This was left entirely blank. The statement also contained the following: "Real estate owned at reasonable market value" after which appeared a dollar sign and a blank line. Written in on this statement appeared the following in bankrupt's own handwriting: "Farm 720 acres." Appellant contends that the bankrupt thus represented that he owned a farm of 720 acres. The bankrupt, however, testified that what he meant was that he farmed 720 acres. That is the natural import of what he wrote. Had he intended to represent that he owned 720 acres, he no doubt would have omitted the word "farm" and would have merely inserted 720 acres and no doubt placed a value thereon. We think there was no misrepresentation. The explanation which the bankrupt gave is a natural and ordinary one.

With respect to the omission of the two creditors, appellant claims that the bankrupt was guilty of a material misrepresentation upon which it relied and extended the credit. The identical question upon a nearly identical financial statement was before the federal court in International Harvester Co. of America v. Carlson, 8 Cir., 1914, 217 F. 736, 739. Concerning this the court there said: "This schedule of liabilities is left entirely blank in the statement, and it seems to be contended that because of these blanks the bankrupt states that he owed nothing that could properly come under either of these heads; whereas, in fact, the evidence shows that he was indebted in considerable sums under each head. We do not think that an omission constitutes a 'material statement,' within the meaning of section 14 of the Bankruptcy Act. There is nothing in any other part of the form which declares that blanks unfilled are to be construed as representing that nothing is owing under the heading. A 'material statement' means not a blank, nor an inference from a blank. There must be a direct statement, either negative or positive, which is false, to justify the denial of the bankrupt's discharge." [3]

3. The principle announced in the Carlson case was approved in the following: Robinson v. J. R. Williston & Co., 1 Cir., 1920, 266 F. 970; Farmers' Savings Bank of Grimes, Iowa v. Allen, 8 Cir., 1932, 41 F.2d 208; In re Trimble, 8 Cir., 1932, 55 F.2d 165; In re Smith, D.C.N.D.N.Y. 1916, 232 F. 248; See also Remington on Bankruptcy, Chapter 7, Section 3327.

What was said in the Carlson case applies to the statement in question here.

Under 11 U.S.C.A. § 32, sub. c, when these questions arise under an objection to the discharge of a bankrupt, the referee who holds a hearing, takes the testimony, sees the witnesses, has an opportunity to hear and appraise the bankrupt is vested with a considerable discretion in reaching his judgment as to whether a discharge should or should not be granted. A circuit court on appeal should not disturb his findings and judgment unless for the most cogent reasons appearing in the record, none of which we think are present in the appeal before us.

Affirmed.