In the Matter of Albert M. BARBATO, Bankrupt,

Royal Indemnity Company, a Corporation of the State of New York, a creditor, Appellant.

No. 16457.

United States Court of Appeals Third Circuit.

Argued Sept. 28, 1967.
Reargued April 16, 1968.
Decided June 18, 1968.

James E. Masterson, Kleinberg, Moroney & Masterson, Newark, N. J. (Stickel, Kain & Stickel, Newark, N. J., on the brief), for appellant, Royal Indemnity Co. Joseph M. Keegan, Passaic, N. J., for Albert M. Barbato.

Herman Osofsky, Passaic, N. J., for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN, KALODNER, FORMAN, FREEDMAN, SEITZ and VAN DUSEN, Circuit Judges.

HASTIE, Chief Judge.

This appeal has been taken from an order dismissing a creditor's objections to the discharge of a bankrupt general contractor. It was and is the contention of the creditor, a bonding company which had provided performance and payment bonds covering construction projects undertaken by the bankrupt, that the contractor forfeited his right to a discharge by inducing the bonding company to become his surety through "a materially false statement in writing respecting his financial condition." Within the meaning of section 14c(3) of the Bankruptcy Act, 11 U.S.C. § 32(c) (3).

A divided panel of this court affirmed the order granting a discharge and a rehearing before the court en banc has now been granted.

The members of the original panel and all of us now are agreed that in order to obtain performance and payment bonds the bankrupt gave the appellant a financial statement in which he greatly understated the amount of his outstanding obligations. We also agree that under section 14c of the Bankruptcy Act a discharge must be withheld if this materially inaccurate financial statement was made, as we said in an earlier case, "carelessly and with reckless indifference" to the actual facts. In re Finn, 3d Cir. 1941, 119 F.2d 656, 658. Accord, Morimura, Arai & Co. v. Taback, 1929, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586; Woolen Corp.

of America v. Gitnig, 3d Cir. 1929, 33 F.2d 259; In re Barbiere, E.D.Pa.1951, 97 F.Supp. 86, aff'd per curiam, 3d Cir. 1951, 192 F.2d 1018.

■ A majority of the original panel reasoned that the referee and the district court had found *sub silentio* and with justification in the record that the contractor's false statement of his outstanding obligations had not been made with reckless indifference to the actual facts. However, a majority of the full court now concludes that the referee and the district court neither addressed themselves nor adverted to this critical issue and that the present record, though containing indicia of blameworthy indifference of the contractor to the actual amount of his outstanding obligations, shows such slight exploration of the relevant circumstances that the case must be returned to the referee for a further hearing and explicit findings and decision upon this aspect of the bankrupt's conduct.

Before the referee, the bankrupt sought to exculpate himself by introducing testimony indicating that he did not concern himself with office work but merely sent an accountant to his office employees who supplied the data from which the accountant prepared the understatement of outstanding obligations. Apparently, the contractor's employees gave the accountant only a list of bills received and unpaid, ignoring all other outstanding obligations not evidenced in this way.

It also appears in the testimony of the accountant that, after preparing the financial statement, he did not forward it to the bonding company. Rather, he "gave it to Mr. Barbato, it was up to him, he did what he wanted with it."

In these circumstances, inquiry is appropriate whether the omitted obligations were of such nature and extent and whether the contractor's attention to the entire matter was so minimal as to show that he was recklessly indifferent to the correctness of the statement.

It is also to be considered that a few months after submitting the false financial statement the contractor, with the aid of a new accountant, obtained for income tax purposes an accurate statement of his obligations which disclosed that the earlier statement of his outstanding obligations to the bonding company was grossly in error. The procedure on that occasion was quite different from that which resulted in the understatement to the bonding company. In the words of the new accountant: "So he then sat down with me and he pulled out contracts, I worked with Mr. Barbato. He sat down with me on each individual contract."

It does not appear precisely when this accurate accounting was completed or when the contractor filed his income tax return reflecting it. However, in April and in June he obtained additional bonds, apparently upon the earlier inaccurate financial statement. The referee should determine whether he obtained any of these bonds after the complete accounting had disclosed to him the serious error in his earlier financial statement to the bonding company.

Other questions and other evidentiary matters may well be significant. These set out above are merely indicative of the need for a full exploration of whatever occurrences may be relevant to determination of the ultimate issue.

■■ Finally, as the majority opinion of the panel on first hearing points out, once it is established that a bankrupt has benefited from his issuance of a materially false written statement respecting his financial condition, the burden is then on him to show by way of excuse that his conduct was not attended by a blameworthy attitude or state of mind. In this case, the burden is on the bankrupt to establish that he was not recklessly indifferent to the actual facts in issuing his false financial statement.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

GERALD McLAUGHLIN, Circuit Judge (dissenting).

Appellee, Albert M. Barbato, was a general contractor who, immediately preceding his bankruptcy, was engaged in federal construction projects which necessitated his obtaining performance and payment bonds. He applied to appellant, Royal Indemnity Company, to act as surety on these bonds and in this connection appellant requested semi-annual financial statements. In January, 1964, Erich Stier, accountant for the bankrupt, prepared a financial statement as of December 31, 1963 based on the financial records of the bankrupt which were kept on a cash basis. The statement showed the accounts payable at $92,000.-90 and the net worth at $162,685.64. The statement was given to Barbato who in turn forwarded it to appellant. Royal Indemnity asserts that it relied on the statement and so subsequently became obligated on at least three bonds.

Sometime after January 1, 1964, the bankrupt became concerned about his income tax liability for 1963 and contacted Vincent B. Comperatore, an accountant specializing in tax matters. Mr. Comperatore decided to put the bankrupt's books on an accrual basis in order to decrease his tax liability. The books as set up by Comperatore showed payables as of January 1, 1964 at $354,889.-75, thereby eliminating the net worth indicated on the earlier statement.

Mr. Stier, the accountant who put together the first statement, testified that cash basis books do not show accounts payable. In obtaining this information the procedure he followed was to have the bankrupt's bookkeeper furnish a list of the unpaid bills. In preparing his statement he, therefore, relied on outstanding invoices he received from a girl in Barbato's office.

Explaining the difference between the statement prepared by Mr. Stier and the statement based on the accrual system, Mr. Comperatore stated:

"I reviewed the books myself, I purged the books. And one of the things that became very apparent to me at the time was that the books were prepared on a cash basis.

"And under the use of this basis, definitely, unqualifiedly you are unable to arrive at the true profit and loss or the asset and liability condition at any particular time under this basis, and it is particularly true in the construction business, it is impossible."

He further testified:

"This will answer one of the mysteries involved here, why the books and records show a different amount than the December 31, 1963 statements.

"The December 1963 statements tie in with the books and records that Mr. Stier prepared as December 31, 1963. However, the opening entries of January 1, 1964 prepared in a true accrual method, not a hybrid method, this is a hybrid method Mr. Stier was using in the sense to recapture some of the liabilities from here and there, I went through all the accounts to arrive at all the liabilities, et cetera, and I arrived at this, and this became my ending balance on the Federal income tax return.

"And I used those figures in opening Mr. Barbato's books for the year 1964.

"And this is the mystery that explains the difference between the opening figures of Mr. Barbato's books in 1964 versus the statement."

The difference was substantially resolved by the variation between the two accounting methods employed, and the fact that Mr. Comperatore himself examined each outstanding contract which obligated Barbato in order to determine what the bankrupt would have to pay out in the coming months. Additionally, Mr. Comperatore began his accounting in March, 1964, two months after the December 31st statement had been completed, and, therefore, as he testified, had the advantage of seeing invoices which the bankrupt had received in the interim.

Appellate review of a referee's determination to grant or withhold a discharge is sharply restricted. The applicable standard allows an appellate court to re-

verse the referee only where his decision is clearly erroneous. Kansas Federal Credit Union v. Niemeier, 227 F.2d 287 (10 Cir. 1955); Yates v. Boteler, 163 F.2d 953, 955 (9 Cir. 1947); Schapiro v. Tweedie Foot Wear Corp., 131 F.2d 876, 877 (3 Cir. 1952); Baash-Ross Tool Co. v. Stephens, 73 F.2d 902, 906 (9 Cir. 1934). Addressing itself to the question of the proper scope of review, the court in Kansas Federal Credit Union v. Niemeier, supra, 227 F.2d at 291, stated:

"Under 11 U.S.C.A. § 32, sub. c. when these questions arise under an objection to the discharge of a bankrupt, the referee who holds a hearing, takes the testimony, sees the witnesses, has an opportunity to hear and appraise the bankrupt is vested with a considerable discretion in reaching his judgment as to whether a discharge should or should not be granted. A circuit court on appeal should not disturb his findings and judgment unless for the most cogent reasons appearing in the record * * *."

The right of a bankrupt to receive a discharge is statutory and is to be construed against the objecting creditor and in favor of the bankrupt. In this regard the initial burden is on the objecting creditor to establish prima facie that the bankrupt has committed a statutory offense. It is after the creditor has met this burden that the bankrupt is required to come forward with proof entitling him to a discharge. Johnson v. Bockman, 282 F.2d 544 (10 Cir. 1960); In re Stone, 172 F.Supp. 142, 148 (D.C.E.D.N.Y.1959); In re Barbiere, 97 F.Supp. 86, 88 (D.C. E.D.Pa.1951), aff'd Per Curiam, 192 F.2d 1018 (3 Cir. 1951); Collier on Bankruptcy, 14th Edition, Volume 1, Section 14.43, at page 1405.

The language "a materially false statement" found in 11 U.S.C.A. § 32(c) (3) has been construed to require proof of fraudulent intent before a discharge may be barred. Morimura v. Taback, 279 U.S. 24, 49 S.Ct. 212, 215, 73 L.Ed. 586 (1928); Yates v. Boteler, supra, 163 F.2d at page 959; Schapiro v. Tweedie Foot Wear Corp., supra, 131 F.2d at page 878;

Collier on Bankruptcy, supra, Section 14.40, at page 1396. For a statement to be held materially false within the meaning of 11 U.S.C.A. § 32(c) (3) there must be proof that "it was made and acquiesced in either with actual knowledge that it was incorrect, or with reckless indifference to the actual facts, without examining the available source of knowledge which lay at hand, and with no reasonable ground to believe that it was in fact correct." Morimura v. Taback, supra, 279 U.S. at page 33, 49 S.Ct. at page 215.

An objecting creditor makes out a prima facie case when he shows that there are reasonable grounds for believing that the bankrupt has issued a materially false written statement respecting his financial condition for the purpose of obtaining money or property on credit and this statement was relied on by the objecting creditor. Industrial Bank of Commerce v. Bissell, 219 F.2d 624, 626 (2 Cir. 1955). The bankrupt is then charged with the burden of proving the absence on his part of any intention to deceive. In re Barbiere, supra, 97 F. Supp. at page 88.

In this appeal the referee found that the statement of December 31, 1963 was false but that the bankrupt had no actual intent to deceive Royal Indemnity. The bankrupt's explanation for the incorrect statement showed that it was a result of the bookkeeping method employed by his accountant. In issuing the statement Barbato was relying on the expertise of Stier. That reliance in no way indicates that Barbato was motivated by the requisite deceptive or fraudulent intent. Although, as Comperatore testified, the accrual method of accounting would have given a more accurate picture of the bankrupt's financial condition, Barbato's use of the cash basis method cannot under the undisputed circumstances be construed as reckless indifference to the actual facts. The record indicates that Stier was a Certified Public Accountant of ten years experience and had served as Barbato's accountant as long as he had been in the construction business. Fur-

thermore, the statement in question was one of several prepared by Stier at Barbato's request as required by Royal every six months and received by Royal without objection. The cash method was one of two acceptable systems of accounting and nothing required the bankrupt to employ one rather than the other. This is so even though the cash method reflected payables at one fourth of the actual amount since there is not the slightest inference from the record that Barbato employed the cash method for this purpose. The entire case is devoid of any suggestion that Barbato issued the statement " * * * with no reasonable ground to believe that it was in fact correct." Morimura v. Taback, supra, 279 U.S. at page 33, 49 S.Ct. at page 215.

The Referee did expressly find as a fact that the bankrupt had no intent to deceive but he did not stop there. From the entire evidence, and there is nothing in the record to the contrary, he reasonably concluded that the bankrupt devoted all of his efforts to the physical work and relied on his office staff and his accountants to take care of the paper end of his affairs; that the accountant Stier drafted the bankrupt's financial statement "as of December 31, 1963 [the one involved here], based on the financial records of the bankrupt (which were kept on a cash basis) and on schedules of receivables and payables prepared by Ivan Vaslyk of the bankrupt's office force." The Referee also found that it was the bankrupt himself who early in 1964 engaged another accountant, an expert in tax matters, who put the business on an accrual system which developed the deficit in the bankrupt's financial position. The Referee held that "No evidence was introduced to show that the bankrupt had failed in his statutory duty to explain any loss or deficiency of assets to meet his obligations." Obviously the bankrupt did not present the Bankruptcy Court with any disordered mass of unintelligible papers and records. See Morimura v. Taback, supra, at page 30, 49 S.Ct. 212. While he was not compelled by law to have his books kept on an accrual basis

and his functioning as a cash business satisfied the mandate of the statute, it was his first accountant who installed the cash basis. There is nothing in the record to indicate that the bankrupt knew of the difference between the systems, indeed that he even knew there were two systems. He was occupied with the manual part of his work. His books were taken care of by his office force and his accountant. The full picture of the business was disclosed frankly to the Court. Throughout the Referee's findings which were adopted by the District Court, it is implicit that both the Referee and the District Court considered and concluded that the bankrupt had not acted with reckless indifference to the facts and that his reliance on his office people and primarily on his accountant gave him substantial ground for believing that his statement for 1963 was correct. It should be carefully noted that it was the later examination of the bankrupt's record by the bankrupt's own tax expert that produced the deficit results we have before us. It is plain that we are confronted with no mistried case or error of law by either the Referee or the District Judge. Both carefully explored the bankrupt's actions and conduct and properly did not find that he had been recklessly indifferent to the correctness of the statement of his financial worth. In his opinion, the Referee cites Collier on Bankruptcy, Volume 1, Section 14.40, page 1397 and quotes: "Intention to deceive is always material as an element of proof, and, by the weight of authority, such intent is an essential element." The next sentence provides: "It must be shown that the bankrupt's alleged false statement in writing was either knowingly false or made so recklessly as to warrant a finding that he acted fraudulently." Collier on Bankruptcy, supra. Thus intent to deceive may be shown by proof that a statement was either knowingly false, i. e. with actual knowledge, or recklessly, i. e. with reckless indifference. Therefore, it is evident that the Referee's conclusion that the bankrupt did not intend to deceive the objecting creditor is more

than a *sub silentio* finding on his part. It manifests a complete awareness of the dichotomy of possible proofs sufficient to deny a discharge. The majority opinion assumes a silent finding of no actual knowledge which is subsumed in the Referee's conclusion of no intent to deceive. That same conclusion also must subsume a finding of no reckless indifference. A remand under these circumstances merely calls for the Referee to dissect into specific statements that which he has fairly covered in his general conclusion.

Certainly, the Referee's dismissal of this objection to the discharge was not clearly erroneous and should not be interfered with by this Court. Baash-Ross Tool Co. v. Stephens, supra, 73 F.2d at page 906; Schapiro v. Tweedie Foot Wear Corp., supra, 131 F.2d at page 877.

Appellant's reliance on the Supreme Court's decision in Morimura v. Taback, supra, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586, is misplaced. In that opinion the Court stated that "no evidence whatever was offered by the bankrupts to account for the discrepancies between the statement of January 7 and the tabulated statement drawn from the books." 279 U.S. at page 30, 49 S.Ct. at page 214. Here Barbato gave a believable explanation which was accepted by the Referee.

In re Finn, 119 F.2d 656 (3 Cir. 1941) is inapposite. There the bankrupt in answer to some questions contained in a loan application form indicated that he was not making any installment payments on any loans or for merchandise. In fact the bankrupt was making payments on a loan he had obtained only a few weeks before completing the application form. This Court's finding of reckless indifference in Finn was predicated on vital facts absent from the record before us.

In remanding this appeal the majority opinion directs the Referee to take evidence to enable him to ascertain whether the bankrupt obtained additional bonds "after the complete accounting had disclosed to him the serious error in his earlier financial statement to the bonding company." However, the record indicates that Mr. Comperatore, the accountant who prepared the new accounting system, obtained his information about March 1, 1964, and thereafter was in intimate contact with the bankrupt with whom he reviewed the various contracts. Clearly, the bankrupt had some notice of his true financial picture in early March. This evidence was before the Referee when he reached his decision concerning the bankrupt's intent. In all the circumstances the majority's remand serves only to force him to go over the same material he has already fully and conscientiously passed upon.

I would affirm the judgment of the District Court which confirmed the report of the Referee.

FORMAN, Circuit Judge, joins in this dissent.