**In the Matter of James P. BUTLER, Bankrupt.**

**James P. Butler, Bankrupt, Appellant.**

**No. 17281.**

United States Court of Appeals Third Circuit.

Argued Nov. 19, 1968.

Decided Feb. 27, 1969.

Rehearing Denied March 21, 1969.

---

Myron S. Lehman, Newark, N. J. (John J. McLaughlin, Newark, N. J., on the brief), for appellant.

Kenneth S. Stein, Hunziker & Hunziker, Paterson, N. J., for appellee.

Before GANEY, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

James P. Butler, an individual bankrupt, appeals from an order of the district court affirming the referee's denial of his discharge in bankruptcy. A discharge was denied under Section 14(c) (3) of the Bankruptcy Act (11 U.S.C.A. § 32(c) (3)),[1] because it was found that the bankrupt, as a corporate executive, caused a bank to loan money to the corporation on the basis of false corporate financial statements. The case arose in the following way.

The Miller & Van Winkle Company, a New Jersey corporation, obtained a $50,-000 loan from the Franklin Bank on a demand note personally guaranteed, inter alia, by the bankrupt. The corporation executed an assignment of accounts receivable, supported by invoices falsely showing shipments to customers. Shortly thereafter the corporation went into bankruptcy. Since a balance was still owing on the corporate loan, the bank sued and obtained a judgment against the bankrupt on his personal guarantee. In June, 1965, he filed a voluntary petition in bankruptcy and was thereafter adjudicated a bankrupt. The bank filed in his bankruptcy proceedings a proof of claim for the amount of its judgment, as well as an objection to his discharge.

The referee made, in pertinent part, the following findings:

(1) The assignments of accounts receivable to the Franklin Bank by the bankrupt constituted materially false statements in writing respecting the financial condition of Miller & Van Winkle Company, a corporation.

(2) The Franklin Bank relied on these assignments in extending credit to Miller & Van Winkle Company.

\* \* \* \* \* \*

(4) The bankrupt was an executive officer of the corporation within the meaning of Section 14(c) (3) of the Act.

He therefore concluded that the bankrupt should be denied a discharge under Section 14(c) (3). It is not disputed that the district court affirmed solely on the basis of the referee's findings. This appeal followed.

The thrust of this appeal is directed at the correctness of the referee's finding that the bankrupt was an executive of the corporation. We do not decide that question because of the incompleteness of the record in that it does not contain another important finding required to be made by a referee before he may deny a discharge under Section 14(c) (3). That finding would relate to whether the bankrupt can be charged with knowledge of the falsity of the assignment of accounts receivable either by a showing that the bankrupt knew at the pertinent time that the financial statements were false or

---

1. The statute reads in pertinent part:
   "(c) The court shall grant the discharge unless satisfied that the bankrupt has \* \* \*
   \* \* \* \* \*
   "(3) while engaged in business \* \* \* as an executive of a corporation, obtained for such business money or property on credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting \* \* \* the financial condition of such \* \* \* corporation."

that he was recklessly indifferent in not knowing. Morimura Arai & Co. v. Taback, 279 U.S. 24, 49 S.Ct. 212, 73 L.Ed. 586 (1929); Schapiro v. Tweedie Footwear Corp., 131 F.2d 876, 878 (3rd Cir. 1942); In re Finn, 119 F.2d 656, 658 (3rd Cir. 1941).

There is a particular need in this case for a finding on the question of knowledge, for running through the bankrupt's appellate brief is a denial that he may be charged with knowledge. Moreover, our examination of the testimony taken before the referee shows that, while his testimony was controverted, the bankrupt explicitly denied knowledge at the pertinent time of the falsity of the assignments or responsibility for their preparation.

Faced with the absence of a finding by the referee in a similar setting, this court sitting in banc ordered a remand to the referee for further hearing and determination. In the Matter of Barbato, 398 F.2d 572 (3rd Cir. 1968). Accordingly, we vacate the judgment of the district court and the order of the referee and remand the case to the referee for a further hearing to determine whether the bankrupt knowingly made or published or caused to be made or published the false financial statements or did so with reckless indifference to the facts. If the parties desire, they should be afforded an opportunity to supplement the record.

GANEY, Circuit Judge (dissenting).

I dissent.

In my judgment the approach here taken by the majority that the matter must be remanded to the referee for a further hearing "to determine whether the bankrupt knowingly made or published or caused to be made or published the false financial statements with reckless indifference to the facts" is presently and entirely unnecessary to the matter here posed for decision. This court should decide now, whether or not the Bankrupt was an executive of a corporation, as set forth in § 14(c) (3) of the Bankruptcy Act, which was added to the section by the July 12, 1960 amendment, 74 Stat. 408, and thus affirm the decision of the district court affirming the finding of the referee, or reverse the finding of the district court and hold that the bankrupt was not a business executive, but was a non-commercial debtor, for, as will be adverted to here, there is a wide disparity between the effect of the two.[1]

This disposition, it seems to me, is imperative and cannot be evaded now, as the majority so states, for the reason that if we reverse the finding of the district court and hold that the bankrupt was a non-commercial debtor, while the debt is not discharged in bankruptcy, and the bank creditor may sue for whatever remains after distribution of the dividend under the bankruptcy proceedings, he has no standing to bar the discharge of the fraudulent debtor. In re Bell, D.C., 212 F.Supp. 300. In In re Gadansky, D.C., 249 F.Supp. 114, 115, it is stated as follows:

"Since the 1960 amendment to Section 14(c) (3) of the Bankruptcy Act, 11 U.S.C.A. § 32(c) (3), which states that the dischargeability in bankruptcy

---

1. Remington on Bankruptcy, Sixth Edition, Volume 7, Section 2138.1 (1963 Supplement, p. 16, Note 19a), after discussing non-commercial bankrupts, states as follows:

"The situation is somewhat different in the case of a business bankrupt. The businessman is more likely to be aware of the severe consequences to him of issuing a false financial statement. His ordinary business records enable him to produce a more accurate statement than a householder who may have a multitude of small debts and no records. Furthermore, the financial statement issued by a businessman is frequently for the purpose of establishing credit standing in the community. His creditors may never see the financial statement itself. On the other hand, the non-business debtor normally issues his financial statement to a particular creditor as part of his application for credit or for a loan. That creditor already has the protection of nondischargeability under section 17."

of a nonbusiness debtor will not be barred simply because he has been guilty of a fraud with respect to any particular claim, the victimized creditor has no right to bar the debtor's discharge and he would have no reason to enter the bankruptcy court and raise the question. The claim survives if fraudulent."

To the same effect is In re Courbat, D.C., 274 F.Supp. 1, 3 (1967).

Thus, if we affirm the decision of the district court in finding that the bankrupt was a business executive, we then go to the other factors which concern his discharge, reliance, the intent to deceive, etc., and thus determine whether or not he is entitled to a discharge. However, the order of remand to the referee, in the majority opinion, takes up first the question of whether the bankrupt can be charged with the knowledge of the falsity of the assignment of accounts receivable, as well as his signature to the note, either by showing that the bankrupt knew at the time the financial statements were false, or that he was recklessly indifferent in not knowing. This is only one of the factors which the court must take into consideration in determining whether or not a discharge may be a valid one, and it has been held on numerous occasions that the provisions of the Bankruptcy Act relating to the discharge of a bankrupt are to be construed liberally in favor of the bankrupt. Roberts v. W. P. Ford & Son, In re Roberts, 4 Cir., 169 F.2d 151, 152; Johnston v. Johnston, 4 Cir., 63 F.2d 24, 26; Lockhart v. Edel, 4 Cir., 23 F.2d 912, 913. It follows, therefore, that the question of whether the bankrupt had knowledge that the statement was false is entirely irrelevant as a criterion in determining his capacity as to his being either a corporate executive or a non-commercial debtor.

Accordingly, the remand to make determination of the one incident with respect to knowledge on the part of the bankrupt that what he was doing was false, is a later consideration this court must take into account and only after it

has decided to affirm the judgment of the lower court that the bankrupt was a corporate executive. However, as has been indicated here, it may well be that this court may decide he was a non-commercial debtor and reverse the judgment of the lower court and, therefore, there will be no necessity for going into any question of intent or knowledge since the victimized creditor has no standing to bar the bankrupt here from his discharge, as above indicated.