In re William TOMEO and Mary M. Tomeo, husband and wife, Individually and jointly, Bankrupts.

HCC CONSUMER DISCOUNT COMPANY, Plaintiff,

v.

William TOMEO and Mary M. Tomeo, Defendants.

Bankruptcy No. 77–630 TT, 631 and 632.

United States Bankruptcy Court, E. D. Pennsylvania.

Dec. 18, 1979.

Lawrence J. Hracho, Reading, Pa., for bankrupts.

Ellis Brodstein, Trustee, Reading, Pa.

Stephen J. Gring, Reading, Pa., for HCC Consumer Discount Co.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge:

The present proceedings concern the dischargeability of a certain debt founded on a loan allegedly made in reliance upon a false financial statement.[1]

In December, 1976, William and Mary Tomeo, the bankrupts, applied for and obtained a loan from the plaintiff, HCC Consumer Discount Company ("HCC"), in the gross amount of $3,024, to be repaid in 36 monthly installments of $84 each.[2] At the same time, the bankrupts gave HCC a security interest in their household goods (primarily furniture) which were valued by Mr. Tomeo at $5,000. HCC duly perfected its security interest by filing a financing statement in the appropriate place on January 14, 1977.

The bankrupts made only one payment on the loan before filing voluntary petitions in bankruptcy on April 15, 1977. In the bankrupts' Schedule B–2 (personal property), the value of the same household items which are the subject of HCC's security interest was listed as $600. N.T. at 4. On August

31, 1977, HCC filed a complaint objecting to the discharge of the debt owed it by the bankrupts. The complaint alleges that in filling out the schedule of property in connection with the loan application, the bankrupt falsely stated the value of his household goods and that therefore the debt is nondischargeable by virtue of § 17a(2) of the Bankruptcy Act (11 U.S.C. § 35(a)(2), which provides, in pertinent part:

a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, . . . except such as . . . (2) are liabilities . . . for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive

. . . .

In order to succeed on a § 17a(2) objection, the plaintiff must prove (1) that the bankrupt made the representations; (2) that the representations, when made, were materially false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the damage alleged as the proximate result of the representations having been made. *Cf. In re McMillan*, 579 F.2d 289, 292 n.5 (3d Cir. 1978); *In re Houtman*, 568 F.2d 651, 655 (9th Cir. 1978); *In re Taylor*, 515 F.2d 1370, 1373 (9th Cir. 1975); *Sweet v. Ritter Finance*, 263 F.Supp. 540, 543 (W.D.Va.1967).

Of those elements listed above, not all are in dispute. The bankrupts admit that they made the representations and that the plaintiff relied on them.[3]

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 752.

2. The plaintiff's complaint alleges that $2,940 was due it from the bankrupts at the time of the filing of the petitions. It was stipulated at trial that the amount of the debt be reduced to $2,604 as a result of certain payments having

been made by virtue of disability insurance provided for in the loan. Notes of Testimony [hereinafter cited as N.T.] at 3–4.

3. Defendants stated, in their Memorandum of Law, somewhat circumspectly, that "for the purposes of this memorandum defendant shall assume, arguendo, that the plaintiff had relied upon the statement." Memorandum of Law

■ This standard has been used regularly by the courts which have decided cases on complaints to obtain a determination of the dischargeability of a debt, with one exception: courts seem uniformly to interpret the "materially false" language in § 17a(2) to mean more than "materially untrue" or "materially inaccurate" or "materially incorrect." Instead, courts have read into the meaning of "materially false" in § 17a(2), a requirement that the bankrupt actually knew of the falsity of the representations when he made them, *see, e. g., In re McMillan, supra* at 292, or that "the materially inaccurate financial statement . . . be . . . intentionally false, or made 'carelessly and with reckless indifference to the actual facts.'" *In re Weinroth,* 439 F.2d 787, 788 (3d Cir. 1971) [*citing In re Barbato,* 398 F.2d 572, 573 (3d Cir. 1968)].

The apparent reason for this particular interpretation of the falsity element of § 17a(2) is that the courts which have dealt with this type of § 17a(2) case have wanted to make clear that a debt will be held nondischargeable under § 17a(2) only if the falsity involved is not merely an untrue statement, but a lie, or a statement so carelessly made as to be blameworthy. This would be an adequate interpretation of the falsity element of § 17a(2) if the section did not also require a finding of "intent to deceive" to bar discharge of the debt. Therefore, any additional meaning given to the word "false" in § 17a(2) other than "untrue," "incorrect," or "inaccurate," is nothing but surplusage, since the "intent to deceive" requirement is the element which takes into consideration whether the debtor made the untrue statement, knowing it to be false and with the purpose of deceiving the creditor.

We conclude that when § 17a(2) sets forth the "materially false" requirement, the statutory language should be taken to mean a "substantial or important untruth." See *Black's Law Dictionary* 540, 880, 1280 (5th ed. 1979). By operation of the remaining language of § 17a(2), the bankrupt is culpable for the substantial untruth only if it was made with intent to deceive the creditor.[4]

One possible reason for the meaning heretofore given the word "false" in the § 17a(2) context by some courts, may be the language of § 14c(3) of the Bankruptcy Act. Section 14c(3) precludes the discharge of a bankrupt who has

> while engaged in business as a sole proprietor, partnership, or as an executive of a corporation, obtained for such business money or property on credit by making or publishing . . . a materially false statement in writing respecting his financial condition . . . . [Emphasis added]

In interpreting the meaning of "materially false" in cases involving § 14c(3) objections to discharge, courts have concluded that "false," within the meaning of § 14c(3), means knowingly or intentionally false or made carelessly and with reckless indifference to the actual facts. *In re Weinroth,* 439 F.2d 787 (3d Cir. 1971); *In re Butler,* 407 F.2d 1059, 1061 (3d Cir. 1969), *aff'd,* 425 F.2d 47 (3d Cir. 1970); *In re Barbato,* 398 F.2d 572, 574 (3d Cir. 1968), *aff'd,* 421 F.2d 1324 (3d Cir. 1970); *In re Perlman,* 407 F.2d 861 (3d Cir. 1961).

This interpretation may have been given to the word "false" in § 14c(3) cases, be-

---

for Defendants at 2. We take this to be an admission by the defendants that the plaintiff actually did rely on the false statement submitted by the defendants.

Notwithstanding any such admission and for reasons later discussed, we conclude that the evidence shows that plaintiff relied on the false financial statement in deciding whether to grant the loan.

4. We are aware that the word "false" can mean, in ordinarily legal usage, not only "un-

true," but also "intentionally, knowingly or negligently untrue." *See, e. g., Black's Law Dictionary, supra* at 540. These definitions are, of course, stated in the abstract; hence, it is only with reference to a particular set of circumstances (here, § 17a(2)) that we can ascertain which definition of "false" should be used in interpreting § 17a(2). By a reading of § 17a(2), it can be seen that only a "false" statement made also "with intent to deceive" will bar discharge of a debt under that section.

cause § 14c(3) contains no requirement that the materially false statement have been made "with intent to deceive." By using such an interpretation, debtors avoid having a discharge denied as the result of an "honest mistake." [5]

Because § 17a(2) also uses the "materially false" language, the § 14c(3) interpretation of the same phrase may have been automatically and unnecessarily carried over to an analysis of § 17a(2). The reason that "false" need not and should not be given, in § 17a(2) cases involving a determination of the dischargeability of a debt, the same meaning given to it in § 14c(3) objections to discharge, is that Congress specifically added, in § 17a(2), the "intent to deceive" element, which it omitted from § 14c(3), thereby making it both unnecessary and redundant to give "false" a meaning other than "untrue" in § 17a(2) cases.[6]

The disputed issues in this case center around two questions: (1) Was the bankrupt's statement at the time of the loan application that the value of the furniture was $5,000, "materially false?"; and, (2) If the statement of value was materially false, was it made by the bankrupts with the requisite "intent to deceive?"

■ The question of dischargeability of debts in bankruptcy is a federal question, *In re Meyers*, 1 BCD 1651, 1652 n.4 (E.D.Mich.

1975). The degree of proof which the plaintiff must offer in order to succeed is that degree of evidence which is "clear and convincing." *In re Barlick*, 1 BCD 412, 418 (D.R.I.1974); *In re Brown*, 6 Collier Bankruptcy cases 679, 683 (E.D.Va.1975).

Therefore, to reiterate, the plaintiff-creditor must show, by clear and convincing evidence, the following: (1) That the bankrupt made the representations; (2) that at the time the representations were made they were materially false (*i. e.*, substantially untrue); (3) that the debtor made the representations with the intention and purpose of deceiving the creditor (or that they were made carelessly or with reckless indifference to the actual facts); (4) that the creditor relied on such representations; and (5) that the creditor sustained the damage alleged as the proximate result of the representations having been made.

■ The creditor must carry the burden of persuasion on all five of the above-listed elements. However, once the creditor has made a *prima facie* showing that the debtor made a materially false representation in writing and that the creditor relied upon such representation to its detriment, the burden of production, *viz.*, the burden of going forward with evidence to show that the debtor had no intent to deceive the creditors, shifts to the debtor.[7] *See In re Matera*, 592 F.2d 378 (7th Cir. 1979). *See*

---

5. Query whether this result is in accord with Congressional intent. See Act of July 12, 1960, Pub.L.No. 86–621, 74 Stat. 408–409 (1960) (amending both § 14 and § 17 of the Bankruptcy Act on the same day, yet using different language with respect to the false financial statement requirements).

6. The § 17a(2) analysis which we have adopted, as distinguished from that used by other courts, does not change the result we would have reached in this case had the more predominant analysis been used. The reason for our extensive treatment of § 17a(2) of the Bankruptcy Act is that the language of § 17a(2) has been carried over into § 523(a)(2)(B) of the newly enacted Bankruptcy Reform Act, codified as title 11 of the United States Code, and which states:

§ 523. Exceptions to discharge
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by . . .
(B) [U]se of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive . . . . .
Therefore, in the future, Code § 523(a)(2)(B) may be interpreted in light of § 17a(2) of the old Act.

7. This shift in the burden of going forward in § 17a(2) complaints to determine the dischargeability of a debt parallels the shift in a § 14c(3) objection to discharge, as applied by the courts in their interpretation of Bankruptcy Rule 407, which governs the burden of persuasion in § 14c(3) cases. *See* Bankruptcy Rule 407 and

*also In re Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975).

What happens mechanically, then, is this: Once the creditor has made its *prima facie* case, a presumption arises that the debtor made the representations with "intent to deceive." At that point, the burden of going forward with evidence to the contrary (not the burden of persuasion) shifts to the debtor.

■ The treatment to be accorded that presumption is governed by Rule 301 of the Federal Rules of Evidence, made applicable to bankruptcy proceedings and cases by Rule 1101 of the Federal Rules of Evidence.[8] The effect of the presumption in a § 17a(2) case causes the debtor to be charged with a duty to come forward with some evidence that he had no intention of deceiving the creditor. At this juncture, the credibility of any such evidence introduced by the debtor is not legally relevant: "the mere introduction of evidence rebutting the presumed fact causes the presumption to disappear from the case." Hecht

the Advisory Committee Note following; 1A *Collier on Bankruptcy* ¶¶ 14.12, 14.43 (14th ed. 1978).

The rationale for the shift in the burden of persuasion in § 14c(3) cases is set forth in the Advisory Committee Note to Bankruptcy Rule 407:

. . . [T]he rule leaves to the courts the formulation of rules governing the shift of the burden of going forward with the evidence in the light of such considerations as the difficulties of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the bankrupt than to the objector.

*See also* 1A *Collier on Bankruptcy* ¶ 14.43 at 1407 (14th ed. 1978).

Rule 407 superseded the proviso of § 14c and there has been some debate about whether Rule 407 is constitutional. *See, e. g., In re Decker*, 595 F.2d 185, 189 n.4 (3d Cir. 1979). However, the constitutional issue has no bearing on the case at bar, since (1) Rule 407 is inapplicable to § 17a(2) complaints to determine the dischargeability of a debt and (2) the Advisory Committee's Note, quoted above, states a general principle which operates independently of the Bankruptcy Rules.

8. Federal Rules of Evidence 301 is as follows:
PRESUMPTIONS IN GENERAL IN CIVIL ACTIONS AND PROCEEDINGS

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

*Conference Report*

Under the [Rule as enacted], a presumption is sufficient to get a party past an adverse party's motion to dismiss made at the end of his case-in-chief. If the adverse party offers no evidence contradicting the presumed fact, the court will instruct the jury that if it finds the basic facts, it may presume the existence of the presumed fact. If the adverse party does offer evidence contradicting the presumed fact, the court cannot instruct the jury that it may presume the existence of the presumed fact from proof of the basic facts. The court may, however, instruct the jury that it may infer the existence of the presumed fact from proof of the basic facts.

There exist a number of decisions stating the principle that "fraud is never presumed." *See, e. g., In re Brown*, 6 Collier Bankruptcy Cases 679, 684 (E.D.Va.1975) (and the cases cited therein, most of which involve non-bankruptcy questions). Viewed in context, that "principle" has been used generally by courts in efforts to state that in cases in which fraud is an issue, the complaining party must prove such fraud by clear and convincing evidence and that whether or not fraud has occurred cannot be "left to mere speculation." *See, e. g., General Finance Corp. v. Fidelity and Casualty Co. of New York*, 439 F.2d 981 (8th Cir. 1971). When these courts speak of "no presumption of fraud" in the standard of proof context, the word "presumption" is not to be taken in its literal sense, *i. e.*, a rule " 'attaching to one evidentiary fact certain *procedural consequences* as to the duty of production of evidence by the opponent.' " Hecht and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 *B.U.L.Rev.* 527, 528 (1978), *quoting* 9 J. Wigmore, *A Treatise on the Anglo-American System of Evidence in Trials at Common Law* § 2491 at 288 (3d ed. 1940). What these courts are asserting, apparently, is this: that "fraud must be affirmatively established by clear and convincing proof of each and every essential element." *Mack v. Earle M. Jorgensen Co.*, 467 F.2d 1177, 1179 (7th Cir. 1972).

This is entirely consistent with the use of a Rule 301 presumption in a § 17a(2) case, since the use of such a presumption operates, as outlined in this opinion, to shift the burden of going forward with evidence to the bankrupt in certain circumstances. The Rule 301 presumption *never* causes the shift of the plaintiff's burden of persuasion.

and Pinzler, Rebutting Presumptions: Order Out of Chaos, 58 *B.U.L.Rev.* 527, 527–533 (1978) (this approach has been referred to as the Thayer "bursting bubble theory"), *id.*[9]

We now turn to the evidence presented in this case.

Ronald Besecker of HCC, who handled the bankrupts' loan application, testified that, although it was not HCC's policy generally to obtain a security interest for its loans, HCC did so in this case "Because of the fact that the credit which was outstanding at that time [approximately $7,000 (N.T. at 10)] was almost all in Mr. Tomeo's name alone and if I was going to extend any additional credit, I wanted to make sure that the loan was secured."[10] N.T. at 6. Therefore, the purpose of asking Mr. Tomeo to list his household goods was to see whether there would be sufficient security for the loan. N.T. at 7–8. Mr. Besecker further testified that his standard remarks to applicants like Mr. Tomeo are: "Fill in your best estimate of what you think all of these items listed above would be valued at *at the present time* [emphasis added]," N.T. at 9. Although he was unable to state with absolute certainty whether he actually made such a statement to Mr. Tomeo, Besecker "doubted" that he would have failed to do so, N.T. at 10.

The bankrupt, on the other hand, did not recall any such specific instructions by Mr. Besecker about the valuation of the items of furniture, N.T. at 24, but that he valued them "Just through my—just more or less retracting [*sic*] what I paid for them years ago," *id.* ". . . I tried to remember what I paid for them ten, eleven years ago." *Id.* at 25. Mr. Tomeo was a persuasive witness.

We conclude that the misstatement of the value of the furniture on the schedule of property submitted to plaintiff was a substantial one, thereby satisfying the "materially false" requirement of § 17a(2). Furthermore, but for the assurance of security at least equal in amount to the loan amount, the plaintiff would not have made the loan to the bankrupts; hence, the creditor here reasonably relied upon the false financial statement. At the time of this loan application, the bankrupts had outstanding two balances in excess of $2,400 with Public Finance Consumer Discount Company, one account with Commercial Credit in excess of $4,300, in addition to Master Charge, BankAmericard and Sears account balances, N.T. at 6–7, with total unsecured indebtedness amounting to approximately $7,000. N.T. at 10. We find credible plaintiff's testimony about HCC's having needed and relied upon a statement from the bankrupts showing sufficient security for the loan.

Nonetheless, for a debt to be rendered nondischargeable, the debtor need have made the false representations with the intention and purpose of deceiving the creditor. *In re McMillan*, 579 F.2d 289, 292 (3d Cir. 1978). *See also Shapiro v. Tweedie Footwear Corp.*, 13 F.2d 876, 878 (3d Cir. 1942). The type of fraud required to bar discharge of the debt is actual fraud involving moral turpitude. *In re McMillan, supra, citing Wright v. Lubinko*, 515 F.2d 260, 263 (9th Cir. 1975). What is required, then, is that there must have been some degree of fraudulent intent on the part of the bankrupt. The bankrupt must have had some degree of awareness of the falsity, or poten-

---

**9.** However, the "bursting of the bubble" does not necessarily dilute the strength of the logical inferences which have arisen as a result of the plaintiff-creditor's evidence. Hence, it is quite possible that, even if the debtor has come forward with evidence that he did not intend to deceive the creditor, thereby effectively rebutting the presumption, ("bursting the bubble") the court may still choose to disbelieve the debtor's evidence. Therefore, the plaintiff-creditor could carry its burden of persuasion if

the logical inferences created by the evidence showed clearly and convincingly that the debtor performed the acts alleged with intent to deceive the creditor. *In re Matera*, 592 F.2d 378 (7th Cir. 1979), *citing In re Nelson*, 561 F.2d 1342, 1346–1347 (9th Cir. 1977).

**10.** It was HCC's belief that it would be the only secured creditor with a perfected security interest in the bankrupts' property. N.T. at 10.

**680**

tial for falsity, of his representations. A debt will not be found nondischargeable when the debtor is not at fault.[11]

■ We conclude that the plaintiff has established a *prima facie* case that the bankrupt made materially false representations on which it detrimentally relied, thereby giving rise to a presumption that the bankrupt acted with intent to deceive. However, we further conclude that the debtor has effectively rebutted that presumption by his explanation of his valuation of the household goods,[12] whether the goods at the time of the statement were actually worth $600, or even $1,500, as suggested by the bankrupt in the Notes of Testimony at 22.

The evidence shows that the bankrupt was not a sophisticated borrower, and, contrary to assertions by the plaintiff, there is nothing in the bankrupt's employment history or experience which would require of him any appreciable level of financial acuity. What the evidence does show, especially in view of the bankrupt's credibility as a witness, is that the bankrupt made an "honest mistake." *Cf. In re Barbato*, 421 F.2d 1324, 1327 (3d Cir. 1970) (§ 14c(3)).

Therefore, taking into consideration all of the circumstances of this case, we find that the statement made by the bankrupt to the plaintiff was not made with the requisite intent to deceive. The debt, therefore, shall be discharged.

**11.** For specific language used by the courts in this and other circuits in interpreting the § 17a(2) and § 14c(3) scienter requirements, *see*
   *Third Circuit: In re McMillan*, 579 F.2d 289, 292 (3d Cir. 1978) (known falsehood, intent or purpose to deceive; actual fraud involving moral turpitude); *In re Weinroth*, 439 F.2d 787 (3d Cir. 1971) (knowingly or intentionally false or made carelessly and with reckless indifference to the actual facts); *see also In re Butler*, 407 F.2d 1059, 1061 (3d Cir. 1969), *aff'd*, 425 F.2d 47 (3d Cir. 1970), *In re Barbato*, 398 F.2d 572, 574 (3d Cir. 1968), *aff'd*, 421 F.2d 1324 (3d Cir. 1970); *In re Perlman*, 407 F.2d 861 (3d Cir. 1961);
   *Eighth Circuit: Shainman v. Shears of Alton, Inc.*, 387 F.2d 33, 39–40 (8th Cir. 1967) (intentionally false);

*Ninth Circuit: In re Houtman*, 568 F.2d 651, 656 (9th Cir. 1978) (actual knowledge or reckless disregard); *Wright v. Lubinko*, 515 F.2d 260, 263–264 (9th Cir. 1975) (positive fraud or fraud in fact, involving moral turpitude or intentional wrong, fraudulent intent or reckless disregard for the truth tantamount to willful misrepresentation); *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975) (intent to deceive);
   *Tenth Circuit: Wolfe v. Tri-State Insurance Co.* 407 F.2d 16, 19 (10th Cir. 1969) (intentionally false or intended to deceive); *see also American Nat'l Bank of Denver v. Rainguet*, 323 F.2d 881 (10th Cir. 1963).

**12.** Mr. Tomeo testified: " 'What is the furniture worth?' is all I remember him saying and I think that's what I paid." N.T. at 21.